A.W. WENDELL AND SONS, INC., Plaintiff-Appellee, v. MASOOD A. QAZI et al., Defendants-Appellants.

Second District   No. 2—92—1410

Opinion filed December 29, 1993.—Rehearing denied February 3, 1994.

Robert Steinbock-Sinclair, of Oak Brook, and Keith E. Roberts, Sr., of Donovan & Roberts, P.C., of Wheaton (Robert R. Verchota, of counsel), for appellee.

Edward P. Freud, of Ruff, Weidenaar & Reidy, Ltd., of Chicago (Todd M. Porter, of counsel), and David L. Coghlan, of O'Donnell, Murtaugh & Coghlan, of Lombard, for appellants.

JUSTICE McLAREN delivered the opinion of the court:

The plaintiff, A.W. Wendell & Sons, Inc., filed suit against the defendants, Masood A. Qazi, M.D., and Yazmin Qazi, for breach of contract for the nonpayment of extras on a construction contract. The Qazis responded by filing affirmative defenses alleging that Wendell failed to substantially perform under the contract by failing to construct the home in a workmanlike manner and by failing to properly supervise and direct all work on the project. After a bench trial, the trial court found the Qazis failed to sustain the burden of proving their affirmative defenses. Judgment was entered in favor of Wendell and against the Qazis for $152,185.32, which included a reduction of

$1,750 that Wendell owed to the Qazis for minor repairs to the home. On appeal, the Qazis request this court to reverse the trial court's judgment and enter judgment in their favor or, alternatively, to reverse or vacate the judgment and remand for a new trial before a different judge. The Qazis assert that the trial court erred by: (1) finding that Wendell sustained its *prima facie* case of recovery for extras on the construction contract, including engineering fees; (2) finding that the doctrine of *res judicata* barred the Qazis from asserting their affirmative defenses; (3) finding that the Qazis failed to sustain their burden of proving Wendell had a duty to supervise the marble installation; (4) allowing evidence to be introduced on the issue of Wendell's contractual obligation to supervise the marble installation in light of the court's prior ruling granting partial summary judgment in favor of the Qazis on the same issue; and (5) barring the Qazis' expert witnesses as a sanction for violating Supreme Court Rule 220 (134 Ill. 2d R. 220). For the following reasons, we affirm in part, reverse in part, and modify in part.

On August 5, 1987, the Qazis entered into a contract with A.W. Wendell & Sons, Inc., to design and construct a single-family residence located in an exclusive area of Oak Brook, Illinois, known as the Midwest Club. The contract price of the home was $881,967. Article 10 of the construction contract between Wendell and the Qazis provided that Wendell would act as general contractor on the project. As general contractor, Wendell agreed to "supervise and direct the work" on the home and assumed responsibility for acts and omissions of "all Subcontractors, their agents and employees and all other persons performing any of the Work under a contract with the Contractor." Article 11 defined a "Subcontractor" as "a person who has a direct contract with the Contractor to perform any of the Work at the site."

Although Wendell's role as general contractor encompassed its responsibility to hire subcontractors, article 12 of the contract reserved the Qazis' right to enter into separate contracts with subcontractors of their own choice. Subsection 12.3 of article 12 specified that "[a]ny costs caused by defective or ill-timed work shall be borne by the party responsible therefor."

Wendell's pricing sheet for the home listed Walsh Tile Company as the proposed subcontractor for marble work. However, the Qazis exercised their rights under article 12 by entering into a separate contract with a marble installer of their own choice known as Marble Supply International, Inc. Qazi forwarded a copy of the contract to Wendell. Thereafter, Wendell listed Marble Supply on its statements

which indicated names of the subcontractors furnishing labor and materials on the home.

The Qazis prepared to move into the home in August 1989. When the protective coverings placed on the floors during construction were removed, the Qazis discovered that a substantial portion of the marble flooring was cracked and chipped. The existing floors needed to be replaced with new marble.

On January 18, 1990, the Qazis filed a four-count complaint in the circuit court of Cook County against Wendell and others seeking a judgment declaring that they were not obligated to make further payments on the home until the defective work was remedied (hereinafter referred to as *Qazi I*). On March 9, 1990, Wendell recorded a lien on the property under the Mechanics Lien Act (770 ILCS 60/0.01 *et seq.* (West 1992)) in the circuit court of Du Page County for the nonpayment of $149,288.58 due for extras on the construction contract. On May 30, 1990, Wendell filed a complaint to foreclose the mechanic's lien, for breach of contract, consumer fraud, common-law fraud, and conspiracy.

On June 1, 1990, Wendell filed a motion to dismiss the complaint in *Qazi I* pursuant to section 2—619(a)(3) of the Code of Civil Procedure on the ground that there was another action pending between the same parties for the same cause, namely, Wendell's Du Page County suit to foreclose the mechanic's lien, for breach of contract, and other relief. (735 ILCS 5/2—619(a)(3) (West 1992).) Alternatively, Wendell moved to transfer venue to Du Page County to consolidate *Qazi I* with his suit to foreclose the mechanic's lien. The motion to transfer was granted. (735 ILCS 5/2—1001 (West 1992).) Upon transfer, the circuit court of Du Page County gave *Qazi I* its own number and failed to consolidate it with Wendell's suit to foreclose the mechanic's lien.

Thereafter, Wendell filed a motion in the circuit court of Du Page County to dismiss the Qazis' complaint in *Qazi I* for failure to state a cause of action. (735 ILCS 5/2—619 (West 1992).) Wendell's motion was granted on December 7, 1990, by Judge Black on the basis that Wendell could not be liable for breaching a contract to which it was not a party. The Qazis filed several motions to vacate the dismissal order and transfer the cause to the law division for consolidation with Wendell's suit to foreclose the mechanic's lien. The final motion to reconsider the dismissal order was denied in September 1991. The Qazis' appeal of that order remained pending during the trial in the instant case.

Prior to trial, the Qazis filed a motion for partial summary judgment to establish Wendell's contractual obligation to cure defects in the marble installation and chimney foundation. (735 ILCS 5/2–1005(d) (West 1992).) The trial court entered partial summary judgment against Wendell on the issue of liability for the condition of the fireplace. The court further entered partial summary judgment in favor of the Qazis concerning Wendell's contractual obligation to supervise. The trial court also granted Wendell's motion to bar the testimony of the Qazis' expert witnesses as a sanction for violating the disclosure requirements of Supreme Court Rule 220 (134 Ill. 2d R. 220).

Aside from Wendell's cause of action for breach of contract, all of the various counts of Wendell's complaint against the Qazis were either voluntarily dismissed or dismissed with prejudice pursuant to motion by the Qazis prior to trial. Thus, the trial solely concerned Wendell's cause of action for breach of contract. As an affirmative defense, the Qazis asserted that Wendell was contractually obligated to perform all work on the project in a workmanlike manner and that Wendell breached the agreement by failing to properly supervise and direct the work and correct any resulting defects. Specifically, the Qazis asserted that Wendell failed to provide adequate support structures for the marble flooring; that the flooring had extensive cracks and damages; that the living room floor tilts and sways when walked upon; that Wendell failed to install working fireplaces; and numerous other unrelated allegations.

At trial, Steven Wendell testified that he is a licensed architect and builder employed by his family business, A.W. Wendell and Sons, Inc. As architect and general contractor on the Qazis' home, Wendell received a fee for "overhead and supervision" equal to 12½% of the contract amount due to each subcontractor, plus an additional 12% for extras. Mr. Wendell admittedly charged this fee for overhead and supervision on subcontracts between the owner and the contractor, *including* the contract between the Qazis and Marble Supply. Mr. Wendell rationalized that "[i]f the owner, for example, decided to buy his own lumber, decided to do his own concrete, if I did not have that provision [of charging a fee for overhead and supervision], he could just take my fee away to nothing." Mr. Wendell testified that he did *not* oversee the marble installation by Marble Supply and conversed with the installers solely to furnish storage areas and heat and light for the workers.

The Qazis filed a motion to reconsider a prior ruling barring the use of expert testimony. As an offer of proof, counsel for the Qazis

indicated that Howard Stearn, an architect, would offer his opinion concerning the adequacy of the flooring as installed. Keith Kissner, a general contractor who owns a marble company, would specify the costs necessary to repair and reinstall the marble flooring in the Qazis' home. The court denied the Qazis' motion to reconsider, reiterating that it barred the expert testimony as a sanction for violating the disclosure requirements of Supreme Court Rule 220 (134 Ill. 2d R. 220).

Following closing arguments, the trial court found that Wendell substantially performed all of the work required under the contract in a good and workmanlike fashion. On July 7, 1992, judgment was entered in favor of Wendell and against the Qazis for $152,158.32 plus costs. The court did not state how it arrived at this figure, but it was the precise amount sought by Wendell's counsel.

Next, the court addressed the Qazis' affirmative defenses, stating as follows:

> "I find that not only did the Defendants fail to establish that by a preponderance of the evidence, but that the evidence when considered as a whole clearly supports the contrary to that position and clearly supports the finding by overwhelming evidence that no such obligation was ever agreed to or reasonably contemplated between Dr. and Mrs. Qazi and the Plaintiff, A.W. Wendell and Sons, Inc.
>
> I also find that the evidence also overwhelmingly establishes that Marble Supply was a direct contract party with the Defendants, Dr. and Mrs. Qazi, and was not in any way the subcontractor of A.W. Wendell."

The court recognized that Wendell retained 12% of the contract price for the marble floors as its fee. However, this fact did not override the language of the contract whereby Wendell assumed liability and guaranteed the workmanship of its "Subcontractors." Under the terms of the contract, Marble Supply was not a "Subcontractor" of Wendell because it did not have a direct contract with Wendell to perform work at the site. Therefore, the court ruled that Wendell owed no contractual duty to the Qazis. Concerning the Qazis' affirmative defense that the defects in the marble resulted from Wendell's negligence in failing to adequately construct the foundation for the marble, the court ruled that there was no evidence in the record to support such a finding. Alternatively, the court ruled that the Qazis' affirmative defenses were barred by the doctrine of *res judicata*, since the affirmative defenses were the subject of the Qazis' cause of action in *Qazi I*, which was dismissed by Judge Black on the basis that Wendell

was not liable for the conduct of Marble Supply and it was not a party to the contract.

Subsequent to the entry of the judgment in favor of Wendell in the instant case, this court entered its Rule 23 order in *Qazi I*, which affirmed Judge Black's dismissal, but not for the rationale stated by Judge Black. (*Qazi v. A.W. Wendell Sons, Inc.* (2d Dist. Oct. 22, 1992), No. 2—91—1077 (unpublished order under Supreme Court Rule 23) (*Qazi I*).) Rather, we affirmed on the basis that there was another action pending between the same parties for the same cause, namely, Wendell's instant suit against Qazi for breach of contract. The rationale cited by this court was not an adjudication on the merits. 735 ILCS 5/2—619(a)(3) (West 1992).

The Qazis filed a post-trial motion for a new trial on all the issues or for a *remittitur damna* to reduce the amount of the judgment to $41,888.73. The motion addressed the inconsistencies of the partial summary judgment ruling and the court's final judgment, and the finding of *res judicata* as to the Qazis' affirmative defenses in light of this court's Rule 23 order in *Qazi I*. The motion was denied after a hearing and this appeal ensued.

### WENDELL'S CASE IN CHIEF FOR RECOVERY OF EXTRAS

The Qazis seek to vacate the court's order entering judgment in favor of Wendell for $152,158.32 for extras on the construction contract. The ruling was based on a finding that the additions to the original construction contract were agreed upon by the parties and the resulting improvements were accepted by the Qazis. The Qazis assert that the trial court's ruling is against the manifest weight of the evidence because the record is "virtually devoid of evidence" indicating that Wendell was entitled to recover funds for "extras" on the construction contract.

■ To recover additional compensation from an owner for extra work on a construction contract, a contractor must prove that: (1) the work was outside the scope of the construction contract; (2) the extra items were ordered by the owner; (3) the owner agreed to pay extra, either by his words or conduct; (4) the extras were not furnished by the contractor as his voluntary act; and (5) the extra items were not rendered necessary by any fault of the contractor. (*Berg & Associates, Inc. v. Nelsen Steel & Wire Co.* (1991), 221 Ill. App. 3d 526, 535.) A contractor must prove by "clear and convincing evidence" that the contract items were for extra work, that the owner ordered such extras, agreed to pay for them, and waived the necessity of a written stipulation. (*R & R Construction Co. v. Junior College District No.*

*529* (1977), 55 Ill. App. 3d 115, 118.) The contractor sustains this burden by proving that the extra work was requested by the owner, and there is no evidence indicating that the work was necessary or voluntarily performed due to fault by the contractor. *Berg & Associates*, 221 Ill. App. 3d at 535.

Section 21.1 of the construction contract requires the owner to authorize all changes to the original contract by signing a written "change order." Mr. Wendell admitted that change orders 12 through 15, which increased the contract sum by $50,174.82, were not signed or approved in writing by the Qazis. However, Mr. Wendell testified that Dr. Qazi refused to sign any change orders after discovering the marble flooring had cracked. In Mr. Wendell's opinion, the written approval was a "formality" because Dr. Qazi orally agreed to the changes before the work was performed. Dr. Qazi urges that he could not have orally agreed to the items listed in the disputed change orders because he had no further conversations with Wendell after discovering the cracked marble. Since the contract clearly and unambiguously required the Qazis to approve of any changes in writing, the Qazis assert that Wendell's testimony concerning Dr. Qazi's oral agreement was inadmissible parol evidence and should have been stricken. In the absence of Mr. Wendell's testimony, the Qazis assert that there is insufficient evidence in support of Wendell's *prima facie* case of recovery of contract extras.

■ Under the "merger doctrine" and the "parol evidence rule," preliminary negotiations to a contract are merged into the final agreement. (*Howard A. Koop & Associates v. K P K Corp.* (1983), 119 Ill. App. 3d 391.) Evidence concerning any *prior* written or oral agreement concerning the content of the written contract is inadmissible. (*Magnus v. Lutheran General Health Care System* (1992), 235 Ill. App. 3d 173, 182.) However, under Illinois law, parties to a written contract may alter or modify its terms by a subsequent oral agreement, even though the terms of the contract preclude oral modification. (*Berg & Associates*, 221 Ill. App. 3d at 535; *Falcon, Ltd. v. Corr's Natural Beverages, Inc.* (1987), 165 Ill. App. 3d 815, 821, *later proceeding* (1988), 173 Ill. App. 3d 291; *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, *appeal after remand sub nom. In re Estate of Kern* (1986), 142 Ill. App. 3d 506, 514.) Contrary to the Qazis' contention, Mr. Wendell's testimony concerning Dr. Qazi's *subsequent* oral agreement was admissible.

The issues of the existence of an oral modification, its terms and conditions, and the intent of the parties are questions of fact to be determined by the trier of fact. (*South Shore Amusements, Inc. v. Su-*

*persport Auto Racing Association* (1985), 136 Ill. App. 3d 284, 287.) The findings of the trial court concerning these issues will not be disturbed on review unless they are contrary to the manifest weight of the evidence. *South Shore Amusements*, 136 Ill. App. 3d at 287.

Typical items billed by the disputed change orders include carpentry, electrical work, appliances, plumbing, heating, painting and tiling. Our review of the disputed change orders reveals that a majority of the costs relate to items in excess of the allowance under the original contract or items billed based upon actual completion costs. The Qazis contend that costs assessed for excavation and haul out were not extras, but were part of the original contract price. An addendum to the original contract, admitted as part of plaintiffs' exhibit 7, lists the allowances for various contracted items. It specifically excludes haul out as part of the excavation allowance and indicates that haul out will be billed based on "time and material." While the Qazis claim no responsibility for items billed in the disputed change orders, they have no dispute over the credits for billing errors and returned appliances contained therein.

The change orders also include $11,019.57 for engineering fees. In their brief, the Qazis state that "it is abundantly clear that at least $4,000 of the $11,019.59 [*sic*] claimed by Wendell to be due and owing from the Qazis was not contained within any change order, and that at no time did Steven Wendell claim or testify that such engineering fees were part of the base contract." The Qazis contend that they did not agree to pay for any engineering fees and that the trial court erred in assessing these fees as a portion of the judgment entered against them.

Although the trial court, as the trier of fact, was in a superior position to determine whether Dr. Qazi agreed to all the changes, including the engineering fees, our review of the record reveals that there is insufficient evidence in support of this finding. The sole evidence that the Qazis agreed to pay engineering fees is contained in plaintiff's exhibit 18, a letter sent by Dr. Qazi to Mr. Wendell. In the letter, Dr. Qazi expresses concern about the condition of the home and its delayed delivery. In paragraph 4, Dr. Qazi proposes a series of meetings between the appropriate parties and "expert opinions" to resolve who is responsible for the damage, the costs, and any penalties. When questioned about the effect of this letter, Mr. Wendell testified that he retained the engineering firm of Raths, Raths & Johnson after Dr. Qazi's letter requested him to do so. Wendell is correct in its assertion that the engineering fees assessed predate the filing of the instant lawsuit. However, the engineering firm was first contacted after the

Qazis blamed Wendell for the cracked marble. In addition, the same engineering firm was retained by Wendell as an expert witness for trial. Allowing Wendell to recover these fees would effectively charge the Qazis for the expense of Wendell's expert witness.

■ The trial court's judgment in favor of Wendell for $152,158.32 does not indicate how the figure was computed. Since the trial judge expressly found that all of the items in the change orders were agreed upon and accepted by the Qazis, we assume that the final judgment includes engineering fees of $11,019.57 as assessed in the change orders. Based on the evidence presented, we determine that Wendell sustained its burden of proving, by clear and convincing evidence, that the unsigned change orders, aside from the engineering fees, reflected work outside the scope of the original contract, which was ordered and agreed to by the Qazis, and was not voluntarily furnished or necessary due to Wendell's fault.

### THE QAZIS' AFFIRMATIVE DEFENSES

■ A builder is not required to build a perfect structure. (*Evans & Associates, Inc. v. Dyer* (1993), 246 Ill. App. 3d 231, 239.) Rather, a builder is held only to a duty of substantial performance in a workmanlike manner. (*J.R. Sinnott Carpentry, Inc. v. Phillips* (1982), 110 Ill. App. 3d 632, 637.) Substantial performance of a contract means performance of all the essential elements necessary to accomplish the purpose of the contract. *W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1986), 115 Ill. 2d 119, 126.

The Qazis asserted, as affirmative defenses, that Wendell breached its duty of substantially performing in a workmanlike manner by (1) failing to correct defective work; and (2) by failing to supervise and direct all the work on the home. A great deal of evidence was heard on these issues at trial. However, the trial court denied any recovery of the affirmative defenses based on a lack of proof. The court found that the language of the contract unambiguously imposed no duty on Wendell to supervise the installation of the marble by Marble Supply, that there was no evidence in the record to support a finding that the cracked marble resulted from Wendell's breach of a duty to construct the foundation in a workmanlike manner, and that Wendell substantially performed all the conditions required by the contract. The court did not comment on damages proximately caused by a breach of duty.

■ As an alternate theory to deny recovery, Judge Darrah found the Qazis' affirmative defenses were barred by the doctrine of *res*

*judicata*, since Judge Black dismissed the issues raised by the affirmative defenses in *Qazi I*.

Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits rendered by a court of competent jurisdiction absolutely bars a subsequent action involving the same claim, demand, or cause of action by the same parties or their privies. (*People ex rel. Burris v. Progressive Land Developers, Inc.* (1992), 151 Ill. 2d 285, 294; *Rodgers v. St. Mary's Hospital* (1992), 149 Ill. 2d 302, 311.) A judgment is "on the merits" in the sense that it may be pleaded to bar a subsequent action where it amounts to a decision concerning the rights and liabilities of the parties based on ultimate facts or facts disclosed by pleadings, evidence, or both, and on which the right of recovery depends irrespective of formal, technical, or dilatory objections or contentions. (*Fried v. Polk Brothers, Inc.* (1989), 190 Ill. App. 3d 871, 878.) The doctrine of collateral estoppel, or issue preclusion, bars the relitigation of particular issues decided in another action between the same parties on a different cause of action. (*Cirro Wrecking Co. v. Roppolo* (1992), 153 Ill. 2d 6, 19-20.) While *res judicata* precludes the relitigation of single causes of action between two parties, collateral estoppel bars the relitigation of particular facts and issues common in the prior and subsequent actions which are material to both dispositions. (*Cirro*, 153 Ill. 2d at 20.) *Res judicata* bars all matters that were actually raised or could have been raised in the prior proceeding. However, collateral estoppel will not be applied unless it appears that the party against whom the estoppel is asserted *had a full and fair opportunity to litigate the issue in the prior proceeding. Fried*, 190 Ill. App. 3d at 878.

Judge Darrah was correct in stating that an involuntary dismissal with prejudice sometimes operates as an adjudication on the merits. (See *General Parking Corp. v. Kimmel* (1979), 79 Ill. App. 3d 883, 889.) However, a dismissal for lack of jurisdiction, for want of prosecution (*Fanaro v. First National Bank* (1987), 160 Ill. App. 3d 1030), for improper venue or *forum non conveniens* (see *Natural Gas Pipeline Co. v. Phillips Petroleum Co.* (1987), 163 Ill. App. 3d 136), or for the failure to join an indispensable party (*Patzner v. Baise* (1986), 144 Ill. App. 3d 42) is not an adjudication on the merits. We affirmed Judge Black's dismissal of *Qazi I* on the basis that there was another action pending between the parties for the same cause. (735 ILCS 5/2—619(a)(3) (West 1992).) We specifically rejected Judge Black's theory that Wendell could not be liable to Qazi for the actions of Marble Supply since it was not a party to that contract. In the instant case, the issues raised by Wendell and by the Qazis in their affirmative de-

fenses were never litigated or adjudicated on the merits for the purposes of *res judicata* or collateral estoppel in *Qazi I*. Judge Black's dismissal in *Qazi I*, although with prejudice, did not determine the ultimate rights and liabilities of the parties based on ultimate facts. Our affirmance of Judge Black's dismissal in *Qazi I* contemplated that the matters asserted therein would be adjudicated in the instant case. For these reasons, the doctrine of *res judicata* or collateral estoppel does not bar the Qazis from raising their affirmative defenses in the instant case. Thus, the trial court's finding in this regard was error as a matter of law.

1. DUTY

In rendering its final judgment, the trial court stated that the clear and unambiguous language of the contract imposed no duty on Wendell to supervise the conduct of Marble Supply. However, prior to trial, the court entered partial summary judgment in favor of the Qazis on this very issue, stating as follows:

> "I find in favor of [the Qazis] and enter summary judgment on those two issues; that [Wendell] is liable either by virtue of his duty to supervise, under the language of the contract, or by virtue of his duty to contract—to construct the subfloor in a workmanlike fashion.
>
> But that still begs the question as to whether or not there was a causal relationship between the abrogation of either of those two duties and the cracking of the tile, and if there is a relationship, then what's the damages incurred by the owner.
>
> And to complicate it even further, all of this should be subject to a factual determination of the impact of [the trial court's] prior ruling on what I have ruled today."

The final order on this issue read as follows:

> "Summary judgment is granted on issue of liability of [Wendell] either to supervise the marble tile installation or [Wendell's] duty to construct a proper substructure to be determined at trial not inconsistent with the decision entered by [the trial court] in [*Qazi I*]."

Section 2—1005(d) of the Code of Civil Procedure describes the procedures to be followed in ruling on motions for a summary determination of less than all issues in a case:

> "If the court determines that there is no genuine issue of material fact as to one or more of the major issues in the case, but that substantial controversy exists with respect to other major issues, or if a party moves for a summary determination of one

or more, but less than all, of the major issues in the case, and the court finds that there is no genuine issue of material fact as to that issue or those issues, the court shall thereupon draw an order specifying the major issue or issues that appear without substantial controversy, and *directing such further proceedings upon the remaining undetermined issues as are just. Upon the trial of the case, the facts so specified shall be deemed established, and the trial shall be conducted accordingly.*" (Emphasis added.) 735 ILCS 5/2—1005(d) (West 1992).

According to the express terms of section 2—1005, after the court entered partial summary judgment in favor of the Qazis on the issue of liability, the only issues remaining for trial should have concerned the causal relationship between Wendell's breach of duty, if any, and the damages incurred by the Qazis. However, Judge Darrah disregarded his prior ruling and allowed Mr. Wendell to testify about the impact of a client's choice of subcontractor on his fee. Upon rendering the final judgment, Judge Darrah contradicted his prior summary judgment ruling by finding that the contract between Wendell and the Qazis did not obligate Wendell to supervise the installation of the marble by Marble Supply.

Although the court did not formally vacate its prior ruling granting partial summary judgment in favor of the Qazis in a written order, the comments by Judge Darrah during trial and in- rendering judgment indicate that he clearly disavowed the order entering partial summary judgment. Wendell attempts to resolve these inconsistencies by asserting that the partial summary judgment ruling was subject to Judge Black's pronouncements in *Qazi I*. We note that when entering partial summary judgment in favor of the Qazis, Judge Darrah stated:

"I am going to award partial summary judgment, based on the language of the contract, that the Plaintiff owed a duty to supervise the installation of the tile and/or owed a duty to cause the subfloor upon which the tile rests to be constructed in a workmanlike fashion.

\* \* \*

The issues of the causal relationship between either of those obligations and the cracked marble, the issues of the damages that the cracked marble presents to the non-breaching party and the interrelationship of that liability to matters found by [the trial court in *Qazi I*] to be in conflict with what I have said, and, hence *res judicata*, I will reserve.

*So to the extent that what I have just found is not inconsistent with what the proofs show Judge Black's ruling were [sic], they will stand."*

The italicized language does indicate that Judge Darrah's ruling was conditional on the findings of Judge Black in *Qazi I.*

Nevertheless, if Judge Darrah did not intend to grant partial summary judgment based on the language of the contract, or intended to vacate his prior ruling based on Judge Black's pronouncements in *Qazi I,* he should have done so. As a result of this confusion, counsel for the Qazis conducted the trial under the mistaken premise that they had sustained their burden of proving that Wendell had a duty to supervise the marble installation and the construction of the subfloor upon which the marble rests in a workmanlike fashion. When the trial court entered its final ruling that the language of the contract clearly and unambiguously imposed no liability on Wendell for the conduct of Marble Supply, the Qazis were stunned, to say the least.

Thus, the Qazis assert that the trial court's finding that they failed to sustain their burden of proving Wendell had a duty to supervise the installation of the marble by Marble Supply is against the manifest weight of the evidence. The contractual language the trial court found to be unambiguous specifically described Wendell's obligations as follows:

"10.1 The Contractor shall supervise and direct the work, using his best skill and attention. The Contractor shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract.

\* \* \*

10.4 The Contractor warrants to the Owner and the Architect that all materials and equipment incorporated in the Work will be new unless otherwise specified, and that all Work will be of good quality, free from faults and defects and in conformance with the Contract Documents. All Work not so conforming to these standards may be considered defective.

\* \* \*

10.7 The Contractor shall be responsible for the acts and omissions of all his employees and all Subcontractors, their agents and employees and all other persons performing any of the Work under a contract with the Contractor.

## SUBCONTRACTS

11.1 A Subcontractor is a person who has a direct contract with the Contractor to perform any of the Work at the site.

11.2 Unless otherwise specified in the Contract Documents or in the Instructions to Bidders, the Contractor, as soon as practicable after the award of the Contract, shall furnish to the Architect in writing a list of the names of Subcontractors proposed for the principal portions of the Work. The Contractor shall not employ any Subcontractor to whom the Architect or the Owner may have a reasonable objection. The Contractor shall not be required to employ any Subcontractor to whom he has a reasonable objection. Contracts between the Contractor and the Subcontractor shall be in accordance with the terms of this Agreement and shall include the General Conditions of this Agreement insofar as applicable.

## ARTICLE 12

## SEPARATE CONTRACTS

12.1 The Owner reserves the right to award other contracts in connection with other portions of the Project or other work on the site under these or similar Conditions of the Contract.

12.2 The Contractor shall afford other contractors reasonable opportunity for the introduction and storage of their materials and equipment and the execution of their work, and shall properly connect and coordinate his Work with theirs.

12.3 Any costs caused by defective or ill-timed work shall be borne by the party responsible therefor."

Wendell admitted that he is fully responsible for the work of all "Subcontractors" he hires on the project. However, it is Wendell's position that section 11.1 of the contract specifically excludes liability for subcontractors hired by the owner under a separate contract. In rebuttal, the Qazis assert the contract is ambiguous concerning the scope of Wendell's duty because sections 10.1 and 10.4 specifically state that Wendell had a duty to supervise and warranted the workmanship of *all* work performed on the home.

A circuit court must determine, as a question of law, whether the language of a contract is ambiguous concerning the intent of the parties. (*Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 288.) If no ambiguity exists in the language of the contract, the parties' intent must be derived by the writing itself as a matter of law. (*Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d 440,

447.) If the terms of a contract are ambiguous, or capable of more than one interpretation, their construction is a question of fact and parol evidence is admissible to ascertain the parties' intent. *Farm Credit*, 144 Ill. 2d at 447; *Quake*, 141 Ill. 2d at 228-29.

    ■ We find an ambiguity in the language of the contract concerning Wendell's duty to supervise the installation of the marble and guarantee the workmanship of Marble Supply. The clear language of the contract states that Wendell, as general contractor, "shall supervise and direct the work" and "shall be solely responsible for *all* means, methods, techniques, sequences and procedures and for coordinating *all* portions of the Work under the Contract." (Emphasis added.) Wendell also warranted that *"all* Work will be of good quality, free from faults and defects and in conformance with the Contract Documents" and would be considered defective if not so conforming. (Emphasis added.) Even though the contract stated that Wendell assumed liability for "all" work, it specifically exculpated liability for subcontractors operating under a separate contract.

    In light of the ambiguity concerning whether Wendell contractually assumed liability for the work of all subcontractors, it was within the province of the court to consider extrinsic evidence, such as Wendell's conduct with respect to Marble Supply. The fact that Wendell retained a fee for overhead and supervision on the contract with Marble Supply is significant, in light of the fact that it did not retain this fee for other subcontractors operating under a separate contract. Further evidence of Wendell's assumed duty exists in its action of listing Marble Supply as a subcontractor on its statements, when Wendell did not do so for separate subcontracts for carpeting, landscaping, interior decorating, and for the construction of the driveway and wooden deck. In addition, Marble Supply was paid from a construction escrow account through statements submitted by Wendell. We also note that change order 5, admitted into evidence and executed by the Qazis and Wendell, included $38,735 for marble specifications quoted by Marble Supply. The totality of this evidence indicates that Marble Supply was not operating independently of Wendell. Wendell did more than merely provide light and heat and an area to store materials. For these reasons, we determine that the court's finding that the clear and unambiguous language of the contract imposed no duty on Wendell for the conduct of Marble Supply was against the manifest weight of the evidence. Wendell's conduct with respect to Marble Supply provided sufficient evidence to conclude Wendell had a duty to supervise the marble installation.

### 2. BREACH OF DUTY AND PROXIMATE CAUSE

Notwithstanding the court's error in finding the language of the contract imposed no duty, as well as its failure to recognize its prior partial summary judgment ruling, we are not convinced that any judicial error materially affected the outcome of the case. The Qazis were required to prove that Wendell breached its duties imposed by contract and that the marble flooring cracked as a proximate cause of the breach. However, there is absolutely *no* evidence in the record to support the Qazis' theory that Wendell breached its contractual duty to construct the subfloor in a workmanlike manner, or that Wendell's failure to supervise the marble installation directly and proximately caused the Qazis' damages. There was no expert testimony elicited at trial which established that reasonable supervision would have prevented the cracking from occurring or that the structural support for the home was inadequate.

### A. RULE 220 SANCTIONS

The Qazis contend that the failure of proof resulted when the trial court barred their experts from testifying as a sanction for violating the disclosure requirements of Supreme Court Rule 220. The Qazis urge that the sanction was improper because there was no violation of Rule 220.

Supreme Court Rule 220 was designed to eliminate late or surprise disclosures of expert witnesses by establishing a uniform, but flexible, framework for revealing the identity, opinions, and qualifications of expert witnesses. (134 Ill. 2d R. 220, Committee Comments, at 179-80.) Under Rule 220, the identity of an expert who is retained to render an opinion at trial must be disclosed either within 90 days of the date which the substance of the expert's opinion is first known to the party or the party's attorney, or at the first pretrial conference, whichever is later. (See 134 Ill. 2d R. 220(b)(1).) The rule also requires the trial court to establish a schedule of dates for disclosure of all experts not previously disclosed. The dates chosen by the trial court must allow all discovery of experts to be completed at least 60 days prior to "the date on which the trial court reasonably anticipates the trial will commence." 134 Ill. 2d R. 220(b)(1).

In this case, the trial court entered an order on November 5, 1990, scheduling the trial for June 24, 1991. A pretrial conference was set for May 23, 1991. The order directed Rule 220 discovery to be completed 60 days prior to trial and all other discovery before the pretrial conference. At the first pretrial conference, the court ordered

the June 24, 1991, trial date stricken. A status hearing was held at a later date and the court reset the trial for March 16, 1992. Thereafter, the Qazis moved to continue the trial date and extend the cutoff date for the disclosure of experts on the basis that Wendell's failure to answer outstanding discovery requests deprived them of the opportunity to adequately prepare their defense. The trial court set March 4, 1992, as the cutoff date for the disclosure of experts and set the trial for May 27, 1992. On March 4, 1992, the Qazis disclosed the names of Howard Stearn, Keith Kissner, and Gilbert Trujilo as proposed expert witnesses. No addresses were furnished, and answers to Rule 220 interrogatories, filed over one year earlier, were not supplied. On March 27, 1992, the Qazis answered Wendell's Rule 220 interrogatories by stating that Mr. Stearn analyzed the structure of the home and would testify that "there are structural deficiencies in the steel and wood joists." Mr. Kissner was expected to estimate the cost of repairing the defective marble. The parties appeared for trial on May 27, 1992, but the case was reset for June 30, 1992.

On the first day of trial, Wendell moved to bar the Qazis' experts as a sanction for violating Rule 220. The trial court found that supplying the names of proposed experts literally complied with the order requiring the disclosure of experts by March 4, 1992. However, the court found the Qazis' answer to Wendell's Rule 220 interrogatories, served 23 days after the cutoff date for the disclosure of experts, was untimely. The Qazis' experts were barred for violating the November 5, 1990, order which required the completion of expert discovery at least 60 days before the first scheduled trial date of June 24, 1991. When the Qazis urged that continuing the trial date effectually reopened discovery, the court responded:

"[Rule 220] has been interpreted, now, to impose an obligation on the Court, even though such an order was not entered, to assure that all discovery is completed 60 days prior to the first trial date.

Customarily, in here, when the trial date is continued, the first thing lawyers say is 'Should we move up expert discovery completion date?'

\* \* \*

I don't think we can infer from the fact an order entered on February 19, 1992, permitting disclosure of witnesses on the 4th of March that the parties intended or the Court intended to reopen all expert discovery.

I think that is just unfair.

\* \* \*

I think it is a quantum jump in logic that it gave you an option to reopen all discovery or him to begin 220 interrogatories anew.

\* \* \*

Now, I reasonably anticipated the trial would commence on the first time I set it for trial. I don't think that's an unfair construction of the order. I don't know of any authority that automatically slides that back any time a new trial date is given."

The court further stated that its decision to bar the Qazis' experts was based on Rule 220(c)(3), which requires a party "to seasonably supplement his answers to interrogatories propounded under this rule as additional information becomes known to the party or his counsel." (134 Ill. 2d R. 220(c)(3).) In the court's opinion, the "limited discovery amendment of March 4th" did not encompass the ability to supplement interrogatories that were filed over one year earlier.

The Qazis urge that the various continuances in extending the date for the disclosure of experts to March 4, 1992, reopened discovery. In *Paquet v. Steiner* (1993), 239 Ill. App. 3d 866, 869, we held that the disclosure of experts and their opinions 59 days prior to the final trial date, and 413 days after the first scheduled trial date, violated Rule 220. The court attributed no merit to the plaintiff's suggestion that the trial court could not have reasonably believed the trial would commence on the scheduled trial date due to prior continuances and other delays. However, in *Vallejo v. Mercado* (1991), 220 Ill. App. 3d 1, we held that the trial court should have granted a continuance of the trial date to allow discovery of the plaintiff's expert witness, even though the expert was not disclosed within Rule 220 guidelines. In *Vallejo*, contrary to *Paquet*, the plaintiff's delay was justified because new information was obtained through discovery from the defendant.

■ Although there is strong discord between the various districts of the appellate court on the issue of whether courts are vested with discretion in applying sanctions for Rule 220 violations, the Appellate Court, Second District, has embraced the view that a trial court may exercise discretion in applying sanctions for Rule 220 violations by considering the conduct of the parties. (See *Sohaey v. Van Cura* (1991), 240 Ill. App. 3d 266, 286; *Vallejo*, 220 Ill. App. 3d at 8. *Contra Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 226.) While our supreme court has not resolved the issue of the punitive nature of Rule 220, it has indicated that the following factors should be considered in

determining the severity of sanctions for discovery violations: (1) the surprise to the adverse party; (2) the prejudicial effect of the expert's testimony; (3) the nature of the expert's testimony; (4) the diligence of the adverse party; (5) whether objection to the expert's testimony was proper; and (6) the good faith of the party calling the witness. *Barth v. Reagan* (1990), 139 Ill. 2d 399, 417.

In this case, as in *Paquet*, the Qazis missed the original deadline set for the disclosure of experts. However, when the trial was reset for a later date, the court extended the deadline for the disclosure of experts to March 4, 1992. In their depositions, which were made part of the record, the Qazis' experts, Howard Stearn and Keith Kissner, testified that they were retained to look into problems associated with the cracked marble in February 1992. Contrary to the situation in *Vallejo*, no explanation for the Qazis' extreme delay in retaining experts has been suggested. The Qazis were fully aware of the theories they intended to advance when they filed *Qazi I*, as their *prima facie* case in *Qazi I* is identical to their affirmative defenses in the instant case. Since no explanation for the delay was proffered, the trial court would have been justified in refusing to grant an extension. See *Knight v. Haydary* (1992), 223 Ill. App. 3d 564, 578-79.

Nevertheless, the trial court's action in extending the final cutoff date for the disclosure of experts to March 4, 1992, indicates a concern that a continuance was necessary to allow for the use of expert testimony. The Qazis acted in reliance on the court's order extending the cutoff date to March 4, 1992. Timely disclosure of the names of the experts was provided by the Qazis on March 4, 1992; the date set by the trial court. Further, answers to interrogatories which disclosed the opinions of the experts were timely filed on March 27, 1992, which was at least 90 days after the experts' opinions became known (in February 1992), and not later than 60 days prior to the scheduled trial date of May 27, 1992. After considering the factors announced in *Barth v. Reagan*, we determine that the trial court abused its discretion in barring the testimony of the Qazis' expert witnesses as a sanction for violating Rule 220.

In this case, the prejudicial impact of barring the Qazis' witnesses was significant because expert testimony was necessary for the Qazis to establish that Wendell breached its contractual obligation to perform all work in a workmanlike manner. Although Wendell testified he did not supervise the marble installation, expert testimony was necessary to prove that a reasonable supervision would have prevented the damage. Although the trial court should have allowed the Qazis' experts to testify, we will not reverse a judgment of the trial

court based on the failure to admit evidence without an indication of the substance of the excluded evidence. *Healy v. Bearco Management, Inc.* (1991), 216 Ill. App. 3d 945, 957.

To preserve for review the erroneous exclusion of evidence, an offer of proof which specifies the proposed testimony must be made. (*Mulhern v. Talk of the Town, Inc.* (1985), 138 Ill. App. 3d 829, 834.) While an informal but specific offer of proof is acceptable, an offer of proof which merely summarizes the witness' proposed testimony in a conclusional manner does not preserve the error. *Healy*, 216 Ill. App. 3d at 957.

Counsel for the Qazis did not have the proposed experts testify in an offer of proof made as part of the Qazis' motion to reconsider the court's order barring expert witnesses. Rather, counsel noted that the deposition transcripts of the proposed expert witnesses, Howard Stearn and Keith Kissner, were filed and made part of the record. The Qazis' attorney stated that Mr. Stearn, an architect specializing in structural engineering, was "prepared to show the court his blueprint of the proposed solution to what he would believe was the problem with the floor," and would render his opinion on the cause of the defects of the floors and the remedial work required so that cracking would not recur. Mr. Kissner, a general contractor and owner of a marble company, would testify that he was retained to perform repairs on the marble and would estimate the costs of the repairs based on Mr. Stearn's proposed plan.

In his deposition, Mr. Stearn claimed the structure was defective but failed to indicate the basis for his conclusion. He admittedly brought no instruments to the home during his inspection and made no calculations. He did not perform tests to the mortar bed upon which the marble rests, claiming that this was not within the scope of his assignment. Rather, he was told by Dr. Qazi to assume the structure was incorrect and to provide a design capable of sustaining the flooring. Mr. Stearn stated that the cracks running longitudinally suggest the truss joists provide inappropriate support for the floor. However, Mr. Stearn admittedly did not test the strength of the steel support in the Qazis' home or check for building code violations. Nevertheless, he concluded that the support beams were overstressed. While Mr. Stearn suggested a design that was different from the type provided by Wendell, his deposition failed to indicate that the structural support of the flooring was inadequate based on accepted engineering standards. Moreover, Mr. Stearn provided no evidence that the failure to supervise the work of Marble Supply was a proximate cause of the damage to the flooring. Likewise, Mr. Kissner's proposed

testimony concerning the cost of replacing the marble and installing a new substructure assumes that Wendell's breach of contract was the proximate cause of the damages.

Although the record reflects that several erroneous rulings were rendered by the trial court, a reviewing court's concern is not whether an error-free trial occurred, but whether an error substantially prejudiced the appellant or unduly affected the outcome of the trial. (*Cox v. Doctor's Associates, Inc.* (1993), 245 Ill. App. 3d 186, 207.) Based on our review of the deposition transcripts of the proposed expert witnesses and the offer of proof, had the witnesses been allowed to testify as to those matters contained in their depositions and within the reasonable scope thereof (134 Ill. 2d R. 220(d)), the Qazis still would not have sustained their burden of proving (1) that Wendell breached its contractual obligation to construct the home in a workmanlike manner, or (2) that Wendell's failure to supervise the marble installation was a proximate cause of the cracked marble flooring. The proffered opinions of the proposed expert witnesses fail to directly establish a breach of duty resulting in proximately caused damages. For these reasons, the judgment of the circuit court, finding that the Qazis failed to sustain their burden of proving their affirmative defenses, was not against the manifest weight of the evidence.

As a final matter, Wendell asserts in his brief that the judgment of the circuit court must be affirmed because the Qazis failed to provide this court with a complete record since certain exhibits, which were admitted at trial, were not included as part of the record on appeal. The Qazis have supplemented the record with the exhibits Wendell claims were omitted. The record presented adequately apprised this court of all matters necessary to review completely and adequately the issues raised on appeal.

To summarize our holding, we determine that Wendell sustained its burden of proving the Qazis owed additional compensation for extra work on the construction contract. However, the trial court's finding that the Qazis agreed to pay engineering fees of $11,019.57 billed in the unsigned change orders is against the manifest weight of the evidence. In accordance with our power to modify a judgment of the trial court (134 Ill. 2d R. 366(a)(5)), we order a reduction in the judgment of $152,158.32 in favor of Wendell by $11,019.57, which reflects engineering fees the Qazis did not agree to pay.

Although the trial court erred (1) by failing to conduct the trial in accordance with its prior ruling granting partial summary judgment in favor of the Qazis concerning Wendell's duty to supervise the work on the project; (2) by determining Wendell owed no duty to supervise

the installation of the marble; and (3) by barring the Qazis' expert witnesses as a sanction for violating Rule 220, we determine that the Qazis have failed to establish that these errors were sufficiently prejudicial such that the outcome of the trial was affected. Finally, we determine that the trial court's finding that the Qazis failed to sustain their burden of proving their affirmative defenses was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed in part, reversed in part, and modified in part.

Affirmed in part; reversed in part and modified in part.

DOYLE and QUETSCH, JJ., concur.