J AND R CARROZZA PLUMBING COMPANY *et al.*, Appellants, v. THE INDUSTRIAL COMMMISSION *et al.*, (Carmella Carrozza *et al.*, Appellees).

First District (Industrial Commission Division) No. 1—98—2369WC

Opinion filed July 20, 1999.—Rehearing denied September 24, 1999.

RARICK, J., specially concurring, joined by HOLDRIDGE, J.

Robert T. Newman, of O'Connor, Schiff & Myers, of Chicago, for appellants.

John E. Lusak, of Lusak & Cobb, of Chicago, for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On February 7, 1989, John Carrozza, a plumbing contractor for J&R Carrozza Plumbing Company (J&R), respondent, was involved in a work-related automobile accident with an uninsured motorist in which he was struck in the chest. On November 25, 1989, John died while at work. After John's death, his wife, Carmella, claimant, filed a claim against Hanover Insurance Company (Hanover), J&R's uninsured motorist insurance carrier at the time of the February 7, 1989, accident, and a claim under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1991, ch. 48, par. 138.1 *et seq.* (now 820 ILCS 305/1 *et seq.* (West 1996))), alleging the car accident caused John's death. On January 31, 1992, the Industrial Commission (the Commission) accepted a settlement order in the workers' compensation claim, relieving J&R of all liability for injury, including death, stemming from the February 7, 1989, accident. On February 18, 1992, Carmella filed another claim under the Act against J&R, alleging John's death was caused by his work-related activities on November 25, 1989. The circuit court confirmed the Commission's determination the prior settlement was not a bar to this action and awarded Carmella benefits. We reverse. The prior settlement bars the present claim.

According to medical reports compiled after the February 7, 1989, accident, John's test results suggested some myocardial damage. A stress test on February 15, 1989, revealed a subtle abnormality along the bottom of the heart. Dr. W.B. Buckingham believed the February 7, 1989, accident was responsible for a contusion affecting 6% of the heart muscle.

John died on Saturday, November 25, 1989, arguably while performing work for J&R. Medical reports and expert testimony conflicted on whether the cause of death was congestive heart failure, atherosclerosis, genetic fibrosis, a disease of the heart muscle,

hypertension, a myocardial infarction, a dysrhythmia, or some combination thereof. Medical experts also disagreed on whether the prior automobile accident could have played a role in the death. At one point, Buckingham believed the accident had "to be considered as a significant factor in a patient with evidence of congestive failure at the time of death." Two other medical experts believed it was highly unlikely the accident had any effect.

An application for adjustment of the workers' compensation claim as to the February 7, 1989, accident was filed October 5, 1990, some 10 months after John's date of death, November 25, 1989. An uninsured motorist claim was also filed with respect to the February 7, 1989, accident. The uninsured motorist claim is not included in the appellate record, though interrogatories submitted in that action are. They are discussed in detail below. Hanover was both J&R's uninsured motorist insurer and its workers' compensation insurer.

On December 17, 1991, an arbitrator entered an award on the uninsured motorist claim whereby Hanover paid John's estate $473,000. Though the arbitrator's notice of award indicates the arbitrator heard evidence and made findings, a lump-sum settlement order entered on the workers' compensation case in January 31, 1992, indicates the uninsured motorist claim was settled.

The workers' compensation settlement order stated:

"In consideration of the payment of $1.00 by Respondent and settlement payment by Uninsured Motorists Insurance Carrier to Petitioner in settlement of her claim against them, Petitioner agrees to settle out and release forever all claims which she may have against Respondent under the Workers' Compensation Act for accidental injuries, medical expenses and/or permanent disability and/or death, which stem from an accident which her husband sustained on February 7, 1989, which accident allegedly arose out of and in the course of his employment by Respondent."

Less than three weeks after the workers' compensation settlement, on February 18, 1992, Carmella filed another claim under the Act, alleging John's death was caused by his exertion at work on November 25, 1989. J&R's insurer for this workers' compensation claim was not Hanover, but Transportation Insurance Company (Transportation).

The arbitrator denied recovery, concluding the prior settlement was *res judicata* as to this claim. The arbitrator also found that, pursuant to section 5(b) of the Act (820 ILCS 305/5(b) (West 1992)), J&R was entitled to $354,750 credit against any death benefits awarded to Carmella. Finally, the arbitrator denied Carmella's claim for funeral expenses.

On November 17, 1997, the Commission reversed the arbitrator's decision. It concluded the fact the decedent's death is noted in the settlement agreement was not conclusive as to the cause of death. The Commission found John sustained accidental injuries arising out of and in the course of his employment on November 25, 1989, and this was a contributing cause to his death. The Commission found J&R was not entitled to credit under section 5(b) and awarded Carmella $1,750 in funeral expenses (820 ILCS 305/7(f) (West 1992)), interest (820 ILCS 305/19(n) (West 1992)), and $604.73 per week in death benefits (820 ILCS 305/7(a) (West 1992)), capped at $250,000 or 20 years. The circuit court confirmed the Commission's award.

■ Two closely related issues are presented when a party who has entered a settlement accepted by the Commission then attempts to bring another claim. First, as a matter of contract interpretation, the claimant may be barred from bringing suit by the terms of the prior settlement. Second, the prior settlement may be *res judicata* as to the claim. Because *res judicata* bars claimant's suit, we do not decide whether, as a matter of contract, the release from liability for injuries which "stem from" the February 7, 1989, accident extends to the present suit.

■ Under the doctrine of *res judicata*, a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. *Housing Authority v. Young Men's Christian Ass'n*, 101 Ill. 2d 246, 251, 461 N.E.2d 959, 961-62 (1984).

■ When a settlement is approved by the Commission, it becomes *res judicata* as to matters adjudicated and agreed upon. *Industrial Comm'n v. McCartin*, 330 U.S. 622, 628-29, 91 L. Ed. 1140, 1144, 67 S. Ct. 886, 890 (1947) (interpreting Illinois law). It is conclusive as to every matter that could have been offered to sustain the same claim or demand. *Housing Authority*, 101 Ill. 2d at 251-52, 461 N.E.2d at 962. The settlement is a final adjudication upon all matters in dispute up to the time of the agreement. *Stromberg Motor Device Co. v. Industrial Comm'n*, 305 Ill. 619, 622, 137 N.E. 462, 464 (1922).

■ For purposes of *res judicata*, the apparent change in insurers for the two claims is irrelevant. The insurers are subrogated to the rights of the insured by the insured's receipt of payment under the policy. *Country Mutual Insurance Co. v. Regent Homes Corp.*, 64 Ill. App. 3d 666, 670, 380 N.E.2d 516, 519 (1978). If *res judicata* bars a second claim against J&R, the insurer for the second claim cannot be found liable, regardless of whether it was a party to the first suit.

■ Illinois has adopted the transactional test for determining

whether a claim is barred under *res judicata*. Under this approach, a second suit is barred if a single group of operative facts gives rise to the assertion of relief. *River Park, Inc. v. Highland Park*, 184 Ill. 2d 290, 307-10, 703 N.E.2d 883, 891-93 (1998). The same transaction, John's death on November 25, 1989, is at issue in both claims. The settlement agreement determined the car accident caused John's death. Carmella now claims that John's work at J&R on the day of John's death was its cause. Both claims stem from a single group of operative facts, the cause of death, even though the potential causes are several months apart.

■ The settlement agreement clearly determines the February 7, 1989, accident caused John's death in November 1989. On the settlement order, John's date of death was listed beneath the accident date of February 7, 1989. While the nature of the injury was listed on the settlement order as "bruises," the injury was listed as fatal, and the settlement releases J&R from liability for injuries including death. The workers' compensation settlement order explicitly provides that part of the consideration for release of the workers' compensation claim was the money received in settlement of the uninsured motorist claim.

We also consider answers to interrogatories filed in the uninsured motorist claim. Parol evidence is admissible to determine whether a claim is barred by *res judicata*. *Palmer v. Sanger*, 143 Ill. 34, 39-40, 32 N.E. 390, 391 (1892). In these answers, Carmella alleged the accident caused John's death. With the interrogatories, Carmella submitted a statement of damages that listed $425,192 in lost wages from the date of John's death until his retirement at age 65. The $473,000 settlement from the insurance company could not have been intended solely to reflect damages for medical bills and lost wages prior to death, which, according to Carmella's own statement of damages, totalled only $68,538.

In *Rogers v. Industrial Comm'n*, 213 Ill. App. 3d 837, 841, 572 N.E.2d 375, 378 (1991), we held a claimant was barred by *res judicata* from seeking compensation for a shoulder injury after entering a settlement agreement for a workers' compensation claim for a hand injury arising from the same accident. Even though the shoulder injury was not mentioned in the settlement agreement, both injuries arose from the same accident and were patent at the time of the settlement.

In *Aetna Insurance Co. v. Gipson*, 104 Ga. App. 108, 110-11, 121 S.E.2d 256, 257-58 (1961), settlement of a 1959 workers' compensation claim for back injury was held *res judicata* as to the cause of the injury and barred the employee from later bringing a claim that a 1957 accident at work caused the same injury.

We stress the limited nature of our holding. A settlement award is *res judicata* as to causation, but not as to the nature and extent of the disability. *Thurow v. Police Pension Board*, 180 Ill. App. 3d 683, 688-89, 536 N.E.2d 155, 158 (1989); 820 ILCS 305/19(h) (West 1992). Had John been injured, but not killed, at the time of the first settlement, and the settlement did not, as a matter of contract, address future complications arising from the same accident, the settlement would not bar a later claim for his death. Also, absent language in the settlement agreement to the contrary, a claim for an injury unrelated to the one already settled would not be barred, even if the injury occurred prior to the settlement. See *Countryman v. Industrial Comm'n*, 292 Ill. App. 3d 738, 740-41, 686 N.E.2d 61, 63 (1997); *Garcia v. Lubbock*, 634 S.W.2d 776, 778-79 (Tex. Ct. App. 1982). While our recent decision in *Mayhew v. Industrial Comm'n*, 304 Ill. App. 3d 557, 563 (1999), barred a claim brought subsequent to settlement of an unrelated claim, we relied on the broad language of the settlement contract, not principles of *res judicata*.

For all of the above reasons, we reverse the decision of the Commission and reinstate the decision of the arbitrator.

Commission reversed; arbitrator's decision reinstated.

RAKOWSKI and COLWELL, JJ., concur.

JUSTICE RARICK, specially concurring:
I write this special concurrence because I believe claimant is estopped from requesting benefits in this case for her husband's death. While some case language may suggest barring her claim under the principles of *res judicata*, I believe an even stronger case may be made under the doctrine of estoppel. The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same claim, demand or cause of action. See *A.W. Wendell & Sons, Inc. v. Qazi*, 254 Ill. App. 3d 97, 108, 626 N.E.2d 280, 289 (1993). Claimant's second claim for damages is not, however, identical to the first. In the first claim she sought benefits for injuries to her husband from a car accident occurring on February 7, 1989; the second claim involves benefits for his heart attack on November 25, 1989. The doctrine of judicial estoppel, on the other hand, provides that when a party assumes a particular position in one legal proceeding, that party is estopped from asserting a contrary position in a subsequent proceeding. See *Galena Park Home v. Krughoff*, 183 Ill. App. 3d 206, 208, 538 N.E.2d 1366, 1367 (1989). The doctrine is

designed to promote the truth and to protect the integrity of the court system by preventing litigants from deliberately shifting positions to suit the exigencies of the moment. *Bidani v. Lewis*, 285 Ill. App. 3d 545, 550, 675 N.E.2d 647, 650 (1996). It does not turn on the identity of claims but rather on the taking of inconsistent positions. This is exactly what happened here. Claimant initially sought compensation for her husband's fatal injuries incurred on February 7 as sworn to in her answers to interrogatories in the uninsured motorist arbitration proceeding, and now seeks compensation for his fatal injuries occurring on November 25 as stated in her second claim. Claimant's husband suffered only one death. I believe that claimant is estopped from asserting such contrary positions and that, therefore, her second claim is barred.

HOLDRIDGE, J., joins this special concurrence.