SOUTH SHORE AMUSEMENTS, INC., Plaintiff-Appellee and Counterdefendant, v. SUPERSPORT AUTO RACING ASSOCIATION *et al.*, Defendants-Appellants and Counterplaintiffs.

First District (5th Division)   No. 83—0156

Opinion filed August 30, 1985.

Arvid C. Johnson, of Bridgeview, for appellants.

Oscar A. Brotman, of Chicago, for appellee.

JUSTICE PINCHAM delivered the opinion of the court:

Defendants, Supersport Auto Racing Association (Supersport) and Peter Jenin (Jenin), appeal from a $8,695 judgment entered by the circuit court of Cook County on a finding that Supersport breached a contract to lease the Raceway Park Motordrome to plaintiff, South Shore Amusements, Inc. (South Shore). We reverse.

The record reveals that South Shore and Supersport executed a written contract which provided that South Shore would lease the Raceway Park Motordrome from Supersport to show a closed circuit telecast of the boxing match between Muhammad Ali and George Foreman on September 24, 1974. Prior to the scheduled date of the match, one of the contestants was injured and the match was post-

poned. Upon receiving notification of the postponement from the boxing promoters in New York, Oscar A. Brotman, the president of South Shore, telephoned Peter Jenin, the president of Supersport, to notify him of the postponement. According to the pleadings submitted by South Shore and Brotman's testimony at trial, Jenin orally agreed during this telephone conversation to make Raceway Park Motordrome (Raceway) available to South Shore to show the telecast on the rescheduled date of the match. Supersport denied in its pleadings and Jenin denied at trial that such an agreement was made. It was uncontroverted, however, that on the date that the match occurred, Raceway was closed and no closed circuit telecast was shown.

South Shore's complaint alleged that Supersport breached its duty to lease Raceway and that Supersport had failed to return South Shore's $1,500 deposit, as well as money received from ticket sales. Count I of South Shore's amended complaint alleged further that when South Shore notified Supersport of the postponement, "the plaintiff and the defendant orally agreed to keep said lease in full force and effect for the postponed date of the boxing exhibition." Count I of the amended complaint also alleged that in reliance on the oral agreement, South Shore spent various sums of money in preparation to show the match.

Count II of the amended complaint alleged that as a result of Supersport's failure to comply with the oral agreement, South Shore lost approximately $60,000 in anticipated earnings from ticket sales. Supersport filed an answer to the amended complaint but was denied leave to file a counterclaim.

Following a bench trial, the court entered judgment in favor of South Shore in the amount of $3,750 on count I and $4,945 on count II, for a total of $8,695. The record reveals that in spite of repeated requests and demands and the initiation of garnishment proceedings, South Shore was unable to collect on the judgment against Supersport. South Shore then filed a second amended complaint to add Supersport's president, Peter Jenin, as a party defendant. Pursuant to an agreement between South Shore and Supersport, the court vacated the judgment that was entered in favor of South Shore and scheduled a new trial.

During the second trial, Jenin was called as an adverse witness by South Shore. He stated that he had been the sole shareholder and president of Supersport for 12 years. In this capacity, he made business and policy decisions and signed all checks. Jenin added that all of his business dealings on behalf of Supersport were performed solely in his capacity as president of the corporation. Jenin did not deny that

Supersport had failed to return the $1,500 deposit from South Shore or the proceeds from the advance sale of tickets. Jenin did deny, however, that he had orally promised or agreed to make Raceway available for a later date.

Next, Oscar A. Brotman testified. Brotman was the president of South Shore and was the attorney of record for South Shore at the second trial. He had just cross-examined Jenin. Brotman testified in narrative form that in August 1974, South Shore and Supersport entered into a written contract wherein South Shore was to lease Raceway from Supersport to show the closed circuit telecast of a boxing match. The agreement provided that Supersport was to receive a fee of 50 cents for each ticket after the first 3,000 tickets sold. The agreement stated that South Shore would pay Supersport $1,500 in advance and the remaining $1,500 no later than September 24, 1974, the scheduled date of the match.

According to Brotman, South Shore paid the $1,500 deposit and delivered equipment and tickets to Raceway. He stated that "one or two" days before the scheduled date of the match, he received a telephone call from the fight promoters in New York City who told him that the contest was postponed for six weeks because one of the contestants was injured. Brotman further testified that he notified Jenin of the delay and that Jenin orally agreed to make Raceway available to show the match on another date.

Brotman testified that prior to the second date on which the boxing match was to take place, he learned that the Raceway Park Motordrome had been closed for the season and that Jenin had gone to Florida. Consequently, the boxing match was not shown. South Shore then requested a refund of the $1,500 deposit. Supersport refused to return the deposit or the money it received from the advance sale of tickets. Brotman was then cross-examined by Arvid G. Johnson, who was the attorney for Supersport and Jenin.

Following closing argument by Johnson and Brotman, who had resumed his position before the court as the attorney for South Shore, both sides rested. This time, the trial court entered judgment in favor of South Shore and against Supersport as well as Peter Jenin in the same amount of $8,695.

On appeal to this court, Supersport and Jenin contend: (1) the trial court erred when it ruled that Supersport breached the agreement to lease Raceway Park Motordrome to South Shore; (2) Jenin should not be held personally liable; and (3) the trial court's denial of Supersport's counterclaim was against the manifest weight of the evidence.

■ We first address Supersport's contention that the trial court erred when it found that Supersport breached the lease agreement with South Shore. To recover damages for breach of contract, a plaintiff must establish both the existence of a contract and a breach thereof by the defendant. (*Thilman & Co. v. Esposito* (1980), 87 Ill. App. 3d 289, 296, 408 N.E.2d 1014.) In the instant case, both sides agreed that the written lease agreement executed on August 15, 1974, was a valid and enforceable contract. No allegations were raised that either party was not ready, willing or able to perform under the terms of that contract. The dispositive issue before this court, therefore, is whether South Shore presented sufficient evidence at trial to establish that there had been a valid oral modification of the written agreement. Supersport contends that the written agreement is controlling and that it was not modified or amended. Based on our careful review of the record, we agree.

The record reveals that the sole evidence presented at trial upon which the court relied in finding that there had been a valid subsequent oral agreement was the testimony of South Shore's president, Oscar A. Brotman. This testimony was emphatically refuted by Jenin. We note that Brotman served in these proceedings as president of South Shore, as the attorney for South Shore and as a witness for South Shore. It appears that no objection was made to these multiple roles of attorney, witness and corporate officer played by Brotman in his own case, and we decline to further comment thereon.

Brotman's testimony was wholly uncorroborated. There were no canceled contracts, canceled checks, written correspondence, evidence of equipment rescheduling, or any other evidence of subsequent acts to support South Shore's contention that the written agreement was later modified by an oral agreement. Additionally, there is no evidence in the record as to the date on which the boxing match was rescheduled to be shown. Brotman did not state during his testimony, nor did Supersport specify in its pleadings, as to what that new date was.

That parties to a written contract may alter or modify its terms by a subsequent oral agreement is well established. (*In re Estate of Kern* (1983), 115 Ill. App. 3d 789, 794, 450 N.E.2d 1286.) Whether an oral contract exists, its terms and conditions and the intent of the parties, are questions of fact to be determined by the trier of fact. (*Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 427, 431 N.E.2d 738.) Findings of the trier of fact will not be disturbed on appeal unless they are clearly contrary to the manifest weight of the evidence. For a judgment to be against the manifest weight of the evidence, it must appear that conclusions opposite to

those reached by the trier of fact are clearly evident. 103 Ill. App. 3d 423, 427.

In the instant case, we conclude from our analysis of the record that the trial court's judgment is against the manifest weight of the evidence. The conclusion is clearly evident that the testimony presented by South Shore at trial was insufficient to establish that the original written contract was modified by a subsequent oral agreement. We therefore hold that the written agreement is controlling and that South Shore failed to establish that it was breached.

In view of our conclusion that the trial court erred when it held that Supersport was liable for breach of contract, we need not address the remaining issues presented on this appeal. Accordingly, the judgment of the circuit court is reversed.

Reversed.

MEJDA, P.J., and SULLIVAN, J., concur.