**MONARCH COACHES, INC.,**
Plaintiff-Appellant,
Cross-Appellee,

v.

**ITT INDUSTRIAL CREDIT,**
Defendant-Appellee,
Cross-Appellant.

Nos. 86–2636, 86–2732.

United States Court of Appeals,
Seventh Circuit.

Argued April 3, 1987.

Decided May 4, 1987.

Richard J. Hollander, Hollander and Hollander, Chicago, Ill., for plaintiff-appellant, cross-appellee.

Mary F. Stafford, Epton, Mullin & Druth, Ltd., Chicago, Ill., for defendant-appellee, cross-appellant.

Before BAUER, Chief Judge, and WOOD, Jr., and POSNER, Circuit Judges.

POSNER, Circuit Judge.

This diversity suit arises from a dispute between a secured lender and its borrower over the seizure of the collateral. Monarch Coaches is in the business of renting out buses. It bought four buses in 1983 and financed their purchase with a loan from ITT Industrial Credit. It agreed to pay ITT $186,780 (principal and interest combined) in 60 monthly installments of $3,113 each (payable on the fifteenth of the month), later reduced to $2,464 when one of the buses was sold and the proceeds applied to the principal of the loan. Toward the end of 1985 Monarch sold another bus, for $10,500. The parties orally agreed to apply the proceeds of this sale not, as before, to the principal of the loan, but rather to the monthly installments. Monarch was several months in arrears; crediting the proceeds of the sale to the monthly installments would help bring it current. ITT asked Monarch to add $1,820 to the $10,500, since the sum would exactly equal five monthly installments ($5 \times \$2,464 = \$10,500 + \$1,820$). Monarch agreed, and ITT credited it with payment in full for the last three months of 1985 and the first two months of 1986. But ITT failed to send Monarch written confirmation of the modification of the original loan agreement, or a new payment book showing the revised monthly installment ($2,464) and the number of installments remaining.

Monarch missed the payments due on March 15, April 15, and May 15, but on May 21 it sent ITT a check for two monthly installments (March and April). Monarch then missed the June 15 payment as well, which put it two months behind. In mid-July, its patience exhausted, ITT seized the two remaining buses, peaceably, and sequestered them in a parking lot, precipitating this suit by Monarch for alleged unlawful detention of its property. After a bench trial, the district judge found that the buses had been detained unlawfully, and he ordered them returned (which has been done). He also found that Monarch had proved no damages, but he ordered ITT to pay Monarch $7,500 in punitive damages (though Monarch had not asked for punitive damages) and excused Monarch from having to make up the installments that had fallen due during the two and a half months when the buses were in ITT's possession. ITT appeals from the judgment against it, while Monarch appeals from the judge's refusal to award it any compensatory damages: it seeks the fair rental value of the buses for the two and a half months.

The judge had two grounds for holding that ITT had not been entitled to repossess the buses. The first was that ITT had wilfully failed to advise Monarch of the current status of its obligations under the loan agreement as modified. The second was that ITT had waived strict compliance with the terms of the agreement by accepting late payments. All concerned agree that Illinois law governs the substantive issues in this case.

There is no doubt that the agreement was modified; and oral modifications of contracts not involving the sale of goods (hence not governed by UCC § 2–209) are enforceable under the common law of Illinois. E.g., *Estate of Kern v. Handelsman*, 115 Ill.App.3d 789, 794, 71 Ill.Dec. 407, 411, 450 N.E.2d 1286, 1290 (1983); *South Shore Amusements, Inc. v. Supersport Auto Racing Ass'n*, 136 Ill.App.3d 284, 287, 91 Ill.Dec. 55, 58, 483 N.E.2d 337, 340 (1985); *Park v. Dealers Transit, Inc.*, 596 F.2d 203 (7th Cir.1979). The contract was orally modified twice, to reflect Monarch's two sales of collateral. It was modified first by reducing the monthly installment, and then by crediting Monarch (upon

receipt by ITT of an extra $1,820) with payment in full for the five months October 1985 through February 1986. After these adjustments the loan still had an unpaid balance of $54,231, and it would therefore be 22 months before the loan was repaid in full; so Monarch could not have failed to realize that it would have to pay ITT $2,464 on March 15 as well as on the fifteenth of the succeeding months for almost two years more. Monarch missed the payment due on March 15, and then the ones due on April 15, on May 15, and on June 15, thus repeatedly defaulting on the modified loan agreement.

It is true that ITT never sent Monarch a payment book or a copy of the modified contract, even though repeatedly requested to do so, but we cannot see how Monarch—a corporation, not a confused consumer—could have been prejudiced by these omissions. Monarch knew what it owed and when: for when it sent a check for the March and April payments it sent the exact amount due under the loan agreement (as orally modified) for those two months. When it failed to make the payments due in May and June, it must have known that it was in default.

██ We may assume that a creditor who precipitates his debtor's default by misleading the debtor as to the amount due, or when, is estopped to declare a default and repossess the collateral. Whether this conclusion is stated in terms of the doctrine of contract conditions (the condition that the creditor deal in good faith with the borrower), or in terms of the tort of fraud or deceit, or of negligent misrepresentation, and whether it makes the repossession tortious as well as a breach of contract, are details that need not trouble us in this case. Somewhere among these alternatives is the theory on which the district judge held ITT's repossession wrongful and awarded punitive damages. But there is no evidence that ITT was trying to mislead Monarch; even more important (since negligent misrepresentation might suffice, and ITT may well have acted negligently in failing to send Monarch the requested papers), there is no evidence that Monarch was mis-

led. It could not have believed that no payment was due in May or June. It owed a huge balance and was required to make monthly payments. It knew the amount of the payment that was due, down to the last dollar. There can be no remedy for misrepresentation if the alleged victim is not misled. Monarch was not misled.

██ As for the district judge's second ground for holding the repossession of the two buses unlawful: the loan agreement contained a "no waiver" clause (i.e., acceptance of late payments is not a waiver of the lender's right to insist on prompt payment in the future), and such clauses are enforceable under Illinois law. See *General Grocer Co. v. Bachar*, 51 Ill.App.3d 907, 912, 8 Ill.Dec. 720, 723, 365 N.E.2d 1106, 1109 (1977); cf. *Van Bibber v. Norris*, 275 Ind. 555, 563–65, 419 N.E.2d 115, 120–22 (1981) (Indiana law). Although parts of the agreement were modified orally, the no-waiver clause was not one of these; it thus continued in force. So the fact that, in May, ITT accepted payments that had been due in March and April did not bar it from declaring a default when Monarch missed the payments due in May and June. By assuring that a lender will not be penalized for his forbearance, a no-waiver clause is, ex ante (before the fact—i.e., before default), in the interest of debtors as well as creditors, for it makes the creditor likelier to accept late payments rather than declaring a default. There is no possible injustice in enforcing the clause against Monarch.

██ Since Monarch broke its contract and since peaceable repossession of collateral is a lawful remedy for a default on a secured loan, see UCC § 9–503, ITT was entitled to judgment in all respects. It is entitled to get back the $7,500 that it paid in punitive damages, and it is entitled to the installments that it did not receive on its loan during the two and a half months that the buses were in its possession.

REVERSED.