**In re Tasker GENERES and Dorothy Generes, Joint Debtors.**

**Tasker GENERES, Plaintiff–Appellant–Cross–Appellee,**

v.

**Edward L. MORRELL and Patricia Morrell, Defendants–Appellees–Cross–Appellants.**

**No. 93 C 5884.**

United States District Court, N.D. Illinois, E.D.

March 15, 1994.

---

Christopher Rudolf Smith, Smith, Williams & Lodge, Chicago, IL, for Tasker Generes.

David Barry Kahn, David B. Kahn & Associates, Ltd., Northfield, IL, for Edward L. Morrell and Patricia Morrell.

Tasker Generes, pro se.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Joint debtors Tasker and Dorothy Generes ("Generes"), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Plaintiffs Edward and Patricia Morrell ("the Morrells") filed a claim for the return of a security deposit pursuant to the terms of a written lease agreement with debtors. Generes counterclaimed, contesting Morrell's security deposit claim and requesting property damages, unpaid rent, and late fees incurred during a purported holdover tenancy by the Morrells. The question presented before the Bankruptcy Court was whether the Morrell's two-month stay beyond their six-month written lease ("lease") was under the terms of an oral extension as the Morrells claimed, or an unauthorized holdover, as Generes alleged. The Bankruptcy Court questioned the credibility of Mr. Generes' testimony and the existence and delivery of a holdover notice allegedly prepared by Generes. Consequently, the Bankruptcy Court granted the Morrell's security deposit claim and denied Generes' counterclaim for unpaid rent and damages. The Bankruptcy Court stipulated that each party was to bear his own costs. Generes appealed the Bankruptcy Court's decision, claiming that the trial court abused its discretion in finding that an oral agreement modified and extended the terms of the original written lease such that no holdover tenancy was created. Generes also claimed that the trial court erred in refusing to allow Generes' closing argument. The Morrells cross-appealed, claiming that the trial court abused its discretion by failing to award the Morrells costs and attorney's fees inasmuch as Generes, an attorney who represented himself pro se, had perjured himself during the bankruptcy proceeding. For the reasons set forth below, we deny Generes' claim that the trial court abused its discretion in finding that an oral lease was created and in denying Generes' request for closing argument. We grant the Morrell's request for costs and attorney's fees pursuant to the trial court proceedings. We therefore remand this case for determination of appropriate costs and attorneys' fees.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Statement of Facts

The Morrells owned a home at 2324 Clover Lane, Northfield, Illinois, which was partially destroyed by fire on December 15, 1990, when a candle ignited a wreath. The Morrells had previously arranged to have their home remodeled, and notified the contractor of the fire damage.

The Morrell's insurance company authorized them to lease temporary housing because repairs were estimated to take several months to complete. Aided by their attorney, the Morrells entered into a written lease with Generes for the rental of a home located at 1829 Happ Road, Northbrook, Illinois. Generes, a practicing attorney for almost twenty years, resided next door. The lease covered a six-month period from December 18, 1990, through June 17, 1991, with rent of $2200 payable on the 18th of each month. The lease contained a clause which provided that the time of each payment was of the essence. The lease also contained a holdover provision in the event that the tenants remained in possession beyond the agreement's term.[1]

After delivering their first check for $6600 to Generes, comprised of the first month's rent and a $4400 security deposit, the Mor-

---

1. The holdover provision provided that:

 If the Lessee retains possession of the Premises or any part thereof after the termination of the term by lapse or otherwise, then the Lessor may at Lessor's option within thirty days after the termination of the term serve written notice upon Lessee that such holding over constitutes either (a) renewal of this lease for one year, and from year to year thereafter at double the rent specified under Section 1 for such period, or (b) creation of a month to month tenancy, upon the terms of this lease except at double the monthly rent specified under Section 1, or (c) creation of a tenancy at sufferance, at a rental of ___ [blank] dollars per day for the time Lessee remains in possession. If no such written notice is served then a tenancy at sufferance with rental as stated at (c) shall have been created. Lessee shall also pay to Lessor all damages sustained by Lessor resulting from retention of possession by Lessee.

rells moved into the rental premises on December 18, 1990. All six payments from December 18, 1990 through May 19, 1991 were made on time and delivered to Generes' door by either Mrs. Morrell or her children. However, the Morrells did not vacate the rental property by June 17, 1991, in accordance with the written lease. Before the expiration of the lease, the Morrells testified that they learned that they would be unable to return to their home in June of 1991 as planned because construction of their home was behind schedule. The Morrells testified that they reached an oral agreement with Generes to extend the lease for two months when construction of their home was to be completed. According to the Morrells, the oral lease stemmed from a phone conversation made by Mr. Morrell to Generes' home at an uncertain date in July of 1991. The Morrells subsequently negotiated with their insurance company for reimbursement of their living expenses at the rental property for two additional months.

Nonetheless, the Morrells did not pay July rent, due on June 18, 1991, until July 6, 1991. In her testimony Mrs. Morrell stated that the payment was late because of an out-of-town trip and was "a simple oversight." The Morrells paid their August rent on time on July 21, 1991, and vacated the premises on or about August 17, 1991. On several occasions thereafter the Morrells contacted Generes about the return of their security deposit. According to the Morrells, Generes informed them that the return of the deposit would be complicated by the fact that he had filed for bankruptcy protection.

Generes denied that he entered into an oral agreement with the Morrells. Generes testified that he wrote and delivered a letter to the Morrells on July 11, 1993, in which he notified the Morrells that Generes had elected to treat the lease as a holdover. Generes testified that he delivered the letter by tossing it on the floor of the rental property and then returning home. Although Generes attached a copy of the letter in question to his complaint, the Morrells deny ever receiving the notice. The notice informed the Morrells that Generes was holding them for a renewal

term of one year, but that he would waive doubling the rent.

Generes subsequently claimed that the Morrells were liable to Generes both for unpaid rent and late fees in excess of $20,000 for the ten-month period after the Morrells vacated the premises. Generes further alleged that the Morrells physically damaged the property by an amount in excess of $8000 during the eight months they occupied the property. The property damage included $3000 in labor for repainting the interior of the home and the replacement of a bathroom fan and fir tree. However, Generes admitted that he did not inform the Morrells of the property damage prior to instituting the bankruptcy lawsuit, and he subsequently dismissed the property damage claims with prejudice within two weeks of the trial date. Moreover, in his testimony Generes admitted that he also failed to raise the issue of the holdover with the Morrells until he filed suit, and that he never attempted to collect the overdue rent and late fees which allegedly accrued after the Morrells left the rental property.

## II. *Procedural History*

On August 14, 1991, several days before the Morrells moved from the rental property, Generes filed a voluntary petition for bankruptcy under Chapter 11. On September 6, 1991, Generes scheduled the Morrell's claim as disputed and described it as a holdover tenancy. Shortly thereafter, on September 21, 1992, the Morrells filed a claim in Bankruptcy Court for the return of their security deposit in the amount of $4400, which was scheduled as a disputed claim. Generes contested the claim and counterclaimed on the basis of the letter he allegedly wrote to the Morrells. In his complaint, Generes alleged that: 1) a holdover tenancy had been created when the Morrells stayed an additional two months at the property; 2) the Morrells owed him a monthly late fee for unpaid rent during the purported holdover tenancy for the ten months after they left the property; and (3) that the Morrells had done over $8000 of physical damage to the property.

After a hearing on June 30, 1993, during which each of the parties and additional wit-

nesses testified, the Bankruptcy Court found that Generes had not in fact written or delivered the letter purporting to create the holdover tenancy, and that the parties had instead orally agreed to extend the lease for two months. Consequently, the Bankruptcy Court entered an order on July 15, 1993, granting the Morrell's their security deposit and denying Generes' counterclaim for rent and fees due to an alleged holdover tenancy. The Court stipulated that each party was to bear his own costs of litigation.

On July 26, 1993, Generes filed a motion for a new trial, which was stricken two days later for Generes' failure to notice the motion for a date certain pursuant to Local Rule 12. The order was entered on the court's docket on August 12, 1993, whereupon Generes renoticed and filed the same motion for a new trial for hearing on August 16, 1993. That same day the trial court denied the motion for a new trial. Generes filed a notice of appeal with the Clerk of the Bankruptcy Court in regard to the holdover tenancy matter on August 19, 1993. The Bankruptcy Court ordered the judgment stayed on appeal on August 23, 1993, and approved the Morrell's Supersedeas Bond in the amount of $5120.00.

On August 30, 1993, the Morrells cross-appealed the Bankruptcy Court's decision to deny them costs and attorney's fees. The basis of the Morrell's appeal is that the court below abused its discretion inasmuch as it found that Generes had "perjured himself in asserting his claims against the Morrells."

III. *Bankruptcy Judge's Opinion*

The Bankruptcy Court observed that the case turned on the credibility of the witnesses:

> This case turns on the pure issue of credibility. If I believe Mr. Generes, that the [holdover] notice was delivered, or, to the extent that the notice was not delivered, that he has elected, pursuant to common law, to treat the occupancy by the Morrells as a hold-over situation and treat them as hold-over tenants, then he is indeed entitled to what he prays for ... If I believe the Morrells, that there was an oral extension agreement by which Mr. Generes

agreed to extend the original six-month term of the lease for an additional two months for the same rental, then Mr. Generes, of course, is not entitled to that additional sum and ... [the Morrells] are entitled to the return of the security deposit.

The Court ultimately found, based on the testimony of all the witnesses, that there was an agreement between the parties whereby the original period of the lease was extended for two months. The Court also found that Generes never delivered the alleged holdover notice as he claimed in his sworn testimony. The Court stated: "I just don't think that the delivery of the notice was reasonable under the circumstances. Nor, in fact, do I believe the notice was delivered at all or prepared at all."

## DISCUSSION

This Court has jurisdiction over both appeals pursuant to 28 U.S.C. § 158 because the Bankruptcy Court's order entered on the docket July 15, 1993, was a final judgement under both 28 U.S.C. § 158 and Rule 8001(a) of the Federal Rules of Bankruptcy Procedure. Under 28 U.S.C. § 158(a) federal district courts have appellate jurisdiction "from final judgments, orders and decrees" of the bankruptcy courts.

### Standard for Review

As a preliminary matter, this Court finds that the proceedings before the bankruptcy court were a "core" proceeding under 28 U.S.C. § 157. A proceeding is "core" if it invokes a substantive right provided by Title 11. *See Barnett v. Stern,* 909 F.2d 973, 981 (7th Cir.1990).

A bankruptcy judge's factual findings are entitled to substantial deference in this Court, and will not be set aside unless they are clearly erroneous. Fed.R.Bankr.P. Rule 7052. Rule 7052 of Fed.R.Bankr.P. incorporates by reference Rule 52 of the Fed.R.Civ. P., which provides in part: "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." A finding is clearly erroneous when "although there is

evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Questions of law require a de novo review. *Park Terrace Townhouses v. Wilds,* 852 F.2d 1019 (7th Cir.1988). The court must also determine whether the trial court applied the proper legal standard to the facts.

### *Denial of Generes' Motion for New Trial*

■ Generes claims that the trial court erred in striking his motion for a new trial for failure to comply with Local Rule 12, which requires that the motion include a date of presentment. Local Rule 12(I), provides that:

> Denial of Motion for Failure to Prosecute. Where the moving party, or if the party is represented by counsel, counsel for the moving party, delivers a motion for which no date of presentment is set and fails to serve notice of a date of presentment within ten days of delivering the copy of the motion to the court as provided by section E of this Rule, the Court may on its own initiative deny the motion.

Generes contends that on July 28, 1993, two days after the motion was filed and prior to the ten-day period allowed under Rule 12(I) to notice a date for hearing the motion, the court improperly entered an order striking the motion. However, as the Morrells correctly point out, even though the court's order was dated two days after the motion was filed, the order was not entered on the docket until seventeen days later—on August 12, 1993. Thus, Generes had more than the requisite ten days to comply with Local Rule 12(I) and set a hearing date before the order was finalized, which he declined to do. Even assuming that the court entered its order prematurely, Generes was not deprived of the opportunity to comply with the requirements of Rule 12. We therefore conclude that the trial court did not err in denying Generes' motion for a new trial. Nor did the trial court err in insisting that the motion for a new trial, when renoticed for a later date, be considered as a Fed.R.Civ.P. Rule 60 mo-

tion. Rule 60 appropriately prescribes the procedure for correcting or vacating orders or other parts of the record which contain clerical mistakes. Clearly the trial court acted within its discretion in denying the Generes' Rule 60 motion when, in its own judgment, either no mistake was made or its effect was inconsequential.

### *Holdover Tenancy v. Tenancy at Sufferance*

We first address the issue of whether the trial court's finding that the parties had a valid two-month oral lease was clearly erroneous. Generes claims that the Morrells were holdover tenants bound by the terms of a letter which he allegedly delivered to the Morrells informing them of his election to hold them over for one year. Even in the absence of of a written notice, however, Generes contends that no valid and enforceable oral contract was created to overcome the presumption at law that a holdover tenancy existed. Generes reasons that under the common law the Morrells would thus be obligated to pay rent for an additional six-month term. The Morrells argue that they were tenants at sufferance based on an alleged oral agreement which modified the original written lease, extending the lease for two additional months. As tenants at sufferance, the Morrells contend that they were entitled to terminate the lease at will and were therefore not obligated to pay rent after vacating the rental property.

■ The failure of a tenant to vacate the premises following the expiration of a lease term may create a tenancy at sufferance or a holdover tenancy. *Bransky v. Schmidt Motor Sales, Inc.,* 222 Ill.App.3d 1056, 165 Ill. Dec. 458, 460, 584 N.E.2d 892, 894 (1991). A tenant at sufferance is "one [who] comes into possession of property by lawful title, but wrongfully holds over after the termination of his interest." *Bransky,* 165 Ill.Dec. at 460, 584 N.E.2d at 894 (quoting Black's Law Dictionary 1466 (6th ed. 1990)). The right of a tenant at sufferance is limited to possession only, which the landlord may terminate at any time, without notice. *Bransky,* 165 Ill. Dec. at 460, 584 N.E.2d at 894.

■ Generes correctly asserts that if a lessee holds over after the expiration of the

term of the lease, only the lessor, not the lessee, has the right to decide whether to treat the lessee as a holdover tenant. In the absence of evidence to the contrary, a presumption arises that there is a holding over under the terms of the original lease. *Bransky,* 165 Ill.Dec. at 461, 584 N.E.2d at 895 (citing *Bellows v. Ziv,* 38 Ill.App.2d 342, 187 N.E.2d 265 (1962). However, in this case, the court below determined that an oral lease was created, overcoming the presumption that a holdover tenancy was created. The rules relating to holdover tenancies do not apply where there is a contrary mutual understanding concerning the tenant's continued occupancy of the premises after expiration of the term of the lease. *Cottrell v. Gerson,* 296 Ill.App. 412, 16 N.E.2d 529 (1938). The burden of establishing such an agreement is on the tenant, and the presumption applies unless a preponderance of the evidence establishes a contrary agreement. *Id.* We next determine whether the Morrells sustained their burden of establishing the existence of an oral agreement. Generes argues that no valid and enforceable oral contract was created.

■ It is well established that the parties to a written contract may alter or modify its terms by a subsequent oral agreement. *South Shore Amusements, Inc. v. Supersport Auto Racing Ass'n,* 136 Ill.App.3d 284, 91 Ill.Dec. 55, 58, 483 N.E.2d 337, 340 (1985). Whether an oral contract exists, its terms and conditions, and the intent of the parties are questions of fact to be determined by the trier-of-fact. *South Shore,* 91 Ill.Dec. at 58, 483 N.E.2d at 340. The question of whether a binding contract exists is determined by the intent of the parties when the document in question is executed. *Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224, 238 (N.D.Ill.1976). In measuring intent, all relevant circumstances surrounding the negotiation and execution of the agreement should be considered, as well as the language and terms of the agreement itself.

The bankruptcy court clearly held that there was a valid and enforceable oral lease. The court found a valid offer, acceptance and consideration; the terms of the agreement were definite, and the surrounding circumstances indicated that the parties intended to be contractually bound. Generes admitted in his testimony that, aside from the notice which the court determined he fabricated, he never discussed the holdover tenancy with the Morrells.

■ Even if no definite term was decided upon, the result is the same. An agreement that does not state or contain a definite time for termination is terminable at the will of either party. *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.,* 130 Ill.App.3d 798, 86 Ill.Dec. 48, 52, 474 N.E.2d 1245, 1249 (1985). Thus, even assuming that the lease term was indefinite, the Morrells acted within their contractual rights in electing to terminate the oral agreement with Generes at their will.

■ Generes next argues that under the parol evidence rule "oral testimony to vary the terms of the written holdover lease is excluded from consideration by the court." Generes' application of the parol evidence rule to the facts of this case is misguided. The parol evidence rule bars evidence of prior or contemporaneous oral agreements which alter the scope or meaning of a written instrument. The only written instrument at issue here is the original written lease. Oral testimony concerning the extension of the lease was not prior to or contemporaneous with the document's creation, but occurred later, in the Spring of 1991. If Generes refers to the letter which purportedly established a holdover tenancy, the court below found that it had been fabricated.

### Prohibition of Closing Argument

Generes next alleges that the trial court abused its discretion in denying him the right to closing argument. The record reflects that the trial judge instructed Generes to sit down and keep quiet immediately prior to making his closing argument.

While the Federal Rules of Civil Procedure and the Federal Rules of Evidence address the order and presentation of closing argument, neither addresses the outright denial of closing argument. It is well-settled that a criminal defendant has a Sixth Amendment right to present a closing argument in a

bench or jury trial. *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). It is less apparent whether a closing argument is required in civil cases.

Recently, the Illinois Court of Appeals noted that closing argument in a civil case is not a right, but a privilege. *Korbelik v. Staschke*, 232 Ill.App.3d 114, 173 Ill.Dec. 181, 596 N.E.2d 805 (1991). In *Korbelik*, the plaintiff in a malicious prosecution action appealed from a judgment in favor of the defendants, claiming that the trial court erred in not allowing plaintiff's counsel to make a closing argument. The judge instructed counsel that closing argument wasn't necessary and indicated that he wished to "save time." *Id.*, 173 Ill.Dec. at 184, 569 N.E.2d at 808. When plaintiff's counsel requested the opportunity to summarize his case, the judge indicated that he was "pretty well aware of the testimony that has been given in this case." *Id.*, 173 Ill.Dec. at 184, 569 N.E.2d at 808.

■ The appellate court noted that "Illinois follows those jurisdictions which hold that "[o]ral argument in a civil proceeding tried before the court without a jury, is a privilege, not a right, which is accorded to the parties by the court in its discretion." *Id.*, 173 Ill.Dec. at 184, 596 N.E.2d at 808. The appellate court held that the trial court did not abuse its discretion in refusing to permit plaintiff's attorney to make a closing argument. The court noted that the case was tried without a jury; involved "a very short trial with an uncomplicated factual scenario"; and that the judge took extensive notes of the trial proceedings. *Id.*

■ In the instant case, we find no evidence that Generes was prejudiced by the trial judge's refusal to allow him to present a closing argument. The trial judge expressly stated that the case turned on the credibility of the parties. The trial judge did not find Generes' testimony to be credible, and we fail to discern how Generes could recover his credibility in a closing argument. Furthermore, we agree with the Morrells that Generes effectively made his closing argument in two post-judgment motions before the trial court. We therefore conclude that, even assuming that the trial judge erred in not allowing Generes to present a closing argument, the error was harmless.

### Costs

■ The Morrells seek costs pursuant to Fed.R.Bankr.P. Rule 7054(b), which provides that "[t]he court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." [2] Seventh Circuit case law recognizes a rebuttable presumption that costs be awarded to the winning party. *Popeil Brothers, Inc. v. Schick Electric, Inc.*, 516 F.2d 772 (7th Cir.1975)

The defendants in *Popeil Brothers* appealed the district court's denial of costs and attorney's fees pursuant to Rule 54(d) of the Federal Rules of Civil Procedure in a patent infringement action. In analyzing Rule 54(d), the Seventh Circuit discussed the awarding of costs in equity proceedings, noting that, prior to the promulgation of the Federal Rules of Civil Procedure, costs were considered a matter of discretion unless controlled by statute or rule of court. *Id.* at 774. The *Popeil* court stated that "[t]he prevailing party is, however, prima facie entitled to costs, and it is incumbent on the unsuccessful party to show circumstances sufficient to overcome the presumption." *Id.* at 774 (quoting *In re Northern Indiana Oil Co.*, 192 F.2d 139, 142 (7th Cir.1951)). "This principle must be ... applied, unless the losing party can show that equity and good conscience require a different judgment." *Id.* at 774 (quoting *Hodgman v. Atlantic Refining Co.*, 20 F.2d 949, 951 (D.Del.1927)). The Seventh Circuit therefore interprets Rule 7054 to mean that a presumption is created that the prevailing party is entitled to costs, which the losing party must overcome.

■ Thus, under *Popeil*, Generes must prove "circumstances sufficient to overcome the presumption" that costs be awarded to the Morrells as the prevailing party. The

2. Fed.R.Civ.P. Rule 54(d), applicable in other federal litigation, provides: "Except when express provision therefore is made either in stat- ute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs ..."

Morrells point to Generes' bad faith in conducting himself throughout the litigation, both as a party to the proceedings and as an attorney, in support of their request for costs. The Morrells allege that Generes has engaged in "punitive litigation tactics" which have resulted in their suffering "a financial bloodbath at the hands of Generes and his meritless claims." First, the Morrells point out that the trial court ultimately determined that Generes, "an attorney and officer of the court," lied about the creation and delivery of a holdover tenancy and fabricated the letter which he attached to his brief in support of that holdover tenancy.[3] Second, the Morrells claim that they were forced to hire legal counsel and incur prohibitive legal fees in order to defend themselves against Generes' meritless claims with respect to the holdover and property damages. The Morrells assert that the claim for over $8000 in property damages during an eight-month lease was so groundless that Generes dismissed it on his own motion just two weeks before the trial. Third, in the Morrells' view, Generes has taken advantage of his status as an attorney in representing himself pro se by prolonging the litigation at their expense without incurring any legal debts. Lastly, the Morrells charge that Generes has disingenuously attempted to establish in his briefs that the Morrells committed arson and insurance fraud.

Generes failed to overcome the presumption that the Morrells, as prevailing parties, are entitled to costs. We therefore hold that the trial court abused its discretion in failing to award costs to the Morrells.

### Attorney's Fees

The Morrells next contend that the trial court abused its discretion in failing to award them attorney's fees.

#### a) Court's Inherent Powers

The Morrells request attorney's fees pursuant to this court's general equitable powers, claiming that they should be awarded attorney's fees based on the "bad faith" exception to the American Rule. The Morrells contend that the same factors which compel the award of costs demand the assessment of attorney's fees against Generes.

 There is no provision in the Bankruptcy Act or Rules which expressly authorizes an award of attorney's fees based on the facts of the present case. Although early decisions consistently denied the grant of such awards, it is now well-settled that a bankruptcy court may assess counsel fees against a party which has acted contemptuously or in bad faith. *See Hammett v. Hammett*, 28 B.R. 1012, 1015 (E.D.Penn.1983). Under a principle known as the American Rule, each party to a lawsuit ordinarily bears its own attorney's fees unless a statute or decisional authority provides otherwise. *See Alyeska Pipeline and Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975); *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). One of the exceptions to the American Rule authorizes a federal court to award counsel fees to a successful party "when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Hall* at 5, 93 S.Ct. at 1946. The authority for this exception rests upon the general equity powers of the federal courts. *Id.*

The Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), recently reaffirmed a district court's inherent power to assess attorney's fees as sanctions for bad-faith conduct in litigation. The Court reasoned that the power to assess sanctions for bad-faith litigation was one of the inherent or implied powers which courts must necessarily possess "to manage their affairs and govern their affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43, 111 S.Ct. at 2132. The power to assess attorney's fees, like other inherent powers possessed by the district court, is based on the need to control court proceedings and the necessity of protecting the exercise of judicial authority in

---

**3.** The trial court expressly stated: "I just don't think that the delivery of the notice was reasonable under the circumstances. Nor, in fact, do I believe the notice was delivered at all or prepared at all."

connection with those proceedings. *Id.* These principles are equally applicable to the bankruptcy court, since a bankruptcy proceeding is an equitable proceeding. *See Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966).

The *Chambers* Court expressly stated that the inherent power of a court can be invoked even if other procedural rules exist to sanction the same conduct:

> There is nothing in [28 U.S.C. § 1927], Rule 11, or other Federal Rules of Civil Procedure authorizing attorney's fees as a sanction, or in this Court's decisions interpreting those other sanctioning mechanisms, that warrants a conclusion that, taken alone or together, the other mechanisms displace courts' inherent power to impose attorney's fees as a sanction for bad-faith conduct. Although a court ordinarily should rely on such rules when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the rules, the court may safely rely on its inherent power if, in its informed discretion, neither the statutes nor the rules are up to task.

*Id.* at ——, 111 S.Ct. at 2126.

Since the Court expressed a preference for sanctioning conduct under rules and statutes, we ordinarily consider any such authority before considering the court's inherent power to award attorney's fees. However, in cases where a statute or rule may not be "up to task" in addressing the full range of conduct at issue, a court may rely on its inherent power to sanction that conduct. *Id.* The *Chambers* Court recognized that sanctioning statutes and rules may reach "only certain individuals or conduct," whereas "the inherent power extends to a full range of litigation abuses." *Id.* The Court concluded that, "[a]t the very least, the inherent power must continue to exist to fill in the interstices." *Id.* at ——, 111 S.Ct. at 2134. Therefore, where rules and statutes fail to "fill in the interstices" of the full range of a party's conduct, a court may invoke its inherent powers to do so:

> In circumstances such as these in which all of a litigant's conduct is deemed sanctiona-ble, requiring a court first to apply rules and statutes containing sanctioning provisions to discrete occurrences before invoking inherent power to address remaining instances of sanctionable conduct would serve only to foster extensive and needless satellite litigation, which is contrary to the aim of the rules themselves.

*Id.* at ——, 111 S.Ct. at 2136.

Therefore, in the instant case, even if we can demonstrate that Generes' conduct is sanctionable under other applicable statutes or rules, we may invoke our inherent power if the full range of his bad-faith conduct is beyond the reach of such authority. For example, in *Chambers* the defendant's conduct relating to the filing of frivolous and false pleadings was sanctionable under Rule 11, which governs papers filed with a court. *Id.* However, the Court noted that the defendant also "attempted, by other tactics of delay, oppression, harassment and massive expense to reduce plaintiff to exhausted compliance," and such acts could not be reached by Rule 11. *Id.*

Similarly, the Court determined that 28 U.S.C. § 1927 is not broad enough to reach "acts which degrade the judicial system," including "attempts to deprive the Court of jurisdiction, fraud, misleading and lying to the Court." *Id.* at ——, 111 S.Ct. at 2130. Here, notwithstanding whether Generes has violated Rule 11 for filing "false and frivolous pleadings," since much of his alleged bad-faith conduct is beyond the reach of the rules, we are justified in relying on our inherent power to sanction him if warranted.

▮▮ In the instant case the record reflects that Generes' conduct rivals that of the defendant in *Chambers,* who not only filed false and frivolous pleadings, but committed perjury and harassed his opponents. Furthermore, Generes used these proceedings as a vehicle for making serious and scandalous allegations which are totally bereft of any basis in fact or law, including claims that the Morrells committed arson and insurance fraud, and objected to his reorganization plan in bad faith. Generes also improperly disclosed the contents of settlement negotiations and accused the trial judge of improper ex

**1022**

parte communications with opposing counsel without any subtantiation whatsoever. Moreover, the briefs which Generes submitted to this court are poorly organized, replete with typographical and grammatical errors, and sorely lacking in relevant legal authority. The fact that Generes is representing himself pro se in this matter and is not a member of the federal trial bar does not alter our decision. Generes has practiced law for nearly twenty years and is not a stranger to the law or to the legal system. While we regard an award of fees against an opposing party to be a severe measure which this Court reserves for exceptional circumstance, we believe such a sanction is warranted here.

Although we have determined that the the full range of Generes' conduct is beyond the reach of Rule 11, for the sake of argument we will consider all applicable statutes and rules in addition to invoking this court's inherent power to award attorney's fees. We first note that the fact that the Morrells did not request attorney's fees under any statute or rule does not preclude this court from exercising its judgment sua sponte that Generes violated a given statute or rule, including Rule 11. Accordingly, under the facts of this case we deem it appropriate to consider awarding attorney's fees pursuant to Rule 11 of the Fed.R.Civ.P. (or its equivalent, Fed.R.Bank P. Rule 9011), and 28 U.S.C. sec. 1927.

b) *Sanctions under Rule 11/Bankruptcy Rule 9011*

Attorney's fees are expressly authorized by Bankruptcy Rule 9011, which tracks the language of Federal Rule of Civil Procedure 11. Bankruptcy Rule 9011, like Fed.R.Civ.P. 11, permits the district court to award sanctions for attorneys who file documents that are not "well grounded in fact ... [or] warranted by existing law...." Rule 9011 provides:

> The signature of an attorney or a party constitutes a certificate that [the signer] has read the document; that to the best of [the signer's] knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for

the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation ... If a document is signed in violation of this rule, the court on motion or its own initiative, shall shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay ... the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Rule 9011(a).

■ Under Rule 11, attorneys are required to make a reasonable inquiry to determine whether pleadings or other documents they sign are well-grounded in fact and warranted by existing law. If the district court concludes that the motion, pleading, or other document was not well-grounded in fact or warranted by the existing law, or was meant to harass, then the court must impose a sanction. Fed.R.Civ.P. 11; *Insurance Benefit Administrators, Inc. v. Martin,* 871 F.2d 1354, 1357 (7th Cir.1989). We note, however, that Rule 11 does not require a finding of bad faith. *Chambers* at 46–48, 111 S.Ct. at 2134; *National Wrecking Co. v. International Bhd. of Teamsters, Local 731,* 990 F.2d 957, 963 (7th Cir.1993). The standard for imposing sanctions under Rule 11 is an objective determination of whether a party's actions were reasonable under the circumstances. *Brown v. Federation of State Med. Bds.,* 830 F.2d 1429, 1435 (7th Cir.1987).

There are two grounds for sanctions in Rule 11: the "frivolousness clause" and the "improper purpose clause." *Brown* at 1435. The frivolousness clause of Rule 11 has two subparts: whether the party or attorney made a reasonable inquiry into the facts, and whether the party or attorney made a reasonable inquiry into the law. *Id.* A violation of either subpart of the frivolousness clause constitutes a violation of Rule 11. *Id.*

■ To determine whether an attorney has made a reasonable inquiry into the facts of a case, we must consider: 1) whether the signer of the documents had sufficient

time for investigation; (2) the extent to which the attorney had to rely on his client for the factual foundation underlying the pleading, motion, or other paper; (3) whether the case was accepted from another attorney; (4) the complexity of the facts and the attorney's ability to do a sufficient prefiling investigation; and (5) whether discovery would have been beneficial to the development of the underlying facts. *Brown* at 1435. To determine whether the attorney in question made a reasonable inquiry into the law, the district court should consider: (1) the amount of time the attorney had to prepare the document and research the relevant law; (2) whether the document contained a plausible view of the law; (3) the complexity of the legal questions involved; and (4) whether the document was a good faith effort to extend or modify the law. *Id.*

██ We first find that Generes has not made a reasonable inquiry into the facts. Many of the allegations made by Generes in his briefs, including claims that the Morrells committed arson and insurance fraud, and objected to his reorganization plan in bad faith, are so plainly contentious and irrelevant that they do not lend themselves to a meaningful investigation into the facts. For instance, Generes devoted considerable time perfecting his argument that the Morrells burned down their own home: "[i]n light of [the] Morrell's testimony, I have [since] concluded that the Morrells deliberately set their home on fire in order to have their insurance pay for what they wanted, but could not afford, themselves."

We agree with the Morrells that "Generes fills his 33 pages with equal parts irrelevance, innuendo, conjecture and other unsupported legal and factual assertions." In numerous instances Generes resorts to accusations and name-calling. In response to Mr. Morrell's trial testimony, Generes comments that "YOU CAN JUST SEE HIS NOSE GROWING as he tell [sic] this big one to the court," and later claims that "[t]he alleged oral lease is a totally preposterous lie!" Moreover, Generes presented thirteen issues in his appellate brief which were presented in an unorganized and incomprehensible fashion.

We further conclude that Generes has not made a reasonable inquiry into the law, which is undoubtedly a consequence of his reliance on unsupported facts to begin with. Generes' briefs contain numerous arguments which are either unsupported or improperly supported by case law outside the Seventh Circuit when case law exists within this circuit.

The other prong of Rule 11, the "improper purpose clause," provides that a motion, pleading, or other document may not be interposed for purposes of delay, harassment, or increasing the costs of litigation. *Brown* at 1435. However, since we have found that Generes violated the frivolousness prong of Rule 11, it is unnecessary to address whether Generes violated the "improper purpose clause." Similarly, we decline to consider whether attorney's fees may also be awarded under 28 U.S.C. § 1927, which provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs incurred because of such conduct." Accordingly, we exercise our discretion in finding that that Generes violated Fed.R.Civ.P. 11 and Bank.R. 9011 by filing a frivolous brief. Alternatively, we rely on our inherent power to impose attorney's fees for Generes' bad faith conduct.

## CONCLUSION

For the foregoing reasons, we reverse that part of the Bankruptcy Court's judgment that denied attorney's fees and costs to the defendants, and remand the case to the Bankruptcy Court to determine and impose attorney's fees and costs pursuant to Bankruptcy Rule 7054(b).